#24145-aff in pt, rev in pt & rem-PER CURIAM

**2007 SD 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LYNETTE D. GISI,                           Plaintiff and Respondent,

  v.

MICHAEL S. GISI,                           Defendant, Petitioner and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
EDMUNDS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JACK R. VON WALD
Judge

* * * *

MICHAEL S. GISI                    Pro se defendant, petitioner
Bushnell, Florida                  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **04/11/07**

#24145

PER CURIAM

[¶1.]        Michael S. Gisi appeals pro se a circuit court order dismissing his petition for modification of child support.  We affirm in part, reverse in part and remand.

## BACKGROUND

[¶2.]        Michael and Lynette D. Gisi were married on August 21, 1993, and divorced February 6, 2001.  Michael was incarcerated in the Florida State Penitentiary at the time of the divorce.  The court awarded Lynette full physical and legal custody of the couple's only minor child and ordered Michael to pay $190 per month for child support.  During the divorce proceeding, Michael requested a deviation from the child support statutory guidelines due to his incarceration and lack of earning capacity, but the court denied his request.  The court determined that Michael's incarceration was a voluntary termination of his employment, thus no deviation was warranted.  The court imputed a minimum wage income to Michael for calculation of his child support obligation.

[¶3.]        On December 27, 2005, Michael filed a pro se petition for modification of child support.[1]  He again requested a deviation based on his incarceration and complete lack of income.  A hearing on the petition was held before a court-appointed referee.  The referee concluded that Michael's incarceration was a result of his voluntary actions and that his prior income was imputed to him based on this

---

1.    Because the order for support was entered prior to July 1, 2005, a showing of a change in circumstances was not required prior to modification.  SDCL 25-7-6.13.

-1-

fact. Therefore, the referee recommended that the court dismiss Michael's petition for modification upon the merits and with prejudice.

[¶4.]    Michael objected to the referee's report, claiming a deviation from the statutory guidelines was warranted pursuant to SDCL 25-7-6.10. He also submitted that a reduction from $190 per month to $100 per month was necessary given the fact that his imputed monthly net income of minimum wage fell within the $0-$800 range in the statutory guidelines. And, only a $100 per month child support obligation is required for this range. The court held a hearing on Michael's objections to the referee's report and ultimately dismissed the petition for modification of child support upon the merits and with prejudice based upon the recommendation of the referee.

[¶5.]    Michael appeals pro se, raising two issues:[2]

> 1.    Whether the circuit court erred in dismissing Michael's petition for modification of child support.
>
> 2.    Whether Michael was denied due process or access to the courts when he was unable to obtain South Dakota law materials concerning modification of child support while incarcerated in a foreign jurisdiction.

## STANDARD OF REVIEW

[¶6.]    Our standard of review in child support modification cases is well settled:

> [W]e review a child support referee's findings of fact under the clearly erroneous standard and questions of law are fully reviewable. Mixed questions of law and fact are classified as questions of law and are reviewable de novo. In addition, when the circuit court has adopted a child support referee's findings

---

2.    Lynette did not file an appellee's brief.

and conclusions, we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law. Further, in applying this standard, we will not reverse findings of fact unless we are left with a definite and firm conviction a mistake has been made.

Wagner v. Wagner, 2006 SD 31, ¶5, 712 NW2d 653, 656 (citing Mathis v. Mathis, 2000 SD 59, ¶7, 609 NW2d 773, 774). Also, "[t]his [C]ourt's standard of review in child support cases is whether the trial court abused its discretion in setting the support." Sjolund v. Carlson, 511 NW2d 818, 820 (SD 1994) (citation omitted).

## ANALYSIS AND DECISION

### 1. Whether the circuit court erred in dismissing Michael's petition for modification of child support.

[¶7.]        "SDCL 25-7-6.2 sets forth mandatory guidelines which courts must follow in setting child support." Schwab v. Schwab, 505 NW2d 752, 756 (SD 1993) (citation omitted). That statute provides that "[t]he child support obligation *shall* be established in accordance with the following schedule subject to such revisions or deviations as may be permitted pursuant to §§ 25-7-6.1 to 25-7-6.18, inclusive." SDCL 25-7-6.2 (emphasis added).

[¶8.]        According to the support obligation schedule in SDCL 25-7-6.2, the minimum monthly child support order for one child is $100. This obligation is imposed for a noncustodial parent with a monthly *net* income between $0-$800. SDCL 25-7-6.2 (emphasis added). Because the court imputed a minimum wage income to Michael, his monthly *gross* income is $893. However, "[t]he trial court is required to calculate the parents' monthly net income, which is equal to gross income less allowable deductions, as codified at SDCL 25-7-6.3 and 25-7-6.7."

Midzak v. Midzak, 2005 SD 58, ¶30, 697 NW2d 733, 740-41.  Thus, the obligation is

determined by the obligor's monthly *net* income, not his *gross* income.

[¶9.]          SDCL 25-7-6.7 provides in relevant part:

> Deductions from monthly gross income shall be allowed as
> follows:
> (1)  Income taxes payable based on the applicable tax rate for a
> single taxpayer with one withholding allowance and a monthly
> payroll period rather than the actual tax rate;
> (2)  Social security and medicare taxes based on the applicable
> tax rate for an employee or a self-employed taxpayer.

According to the child support obligation worksheet supplied by the Department of

Social Services, the amount of income tax deducted for a single taxpayer is $40 and

the amount of Social Security and Medicare tax deducted is $68.[3]  Thus, Michael's

monthly *net* income falls below $800 after tax deductions.  Therefore, his support

obligation should be $100 under the mandatory guidelines.

[¶10.]         This amount is also within the emboldened area of the schedule.[4]

SDCL 25-7-6.2.  Thus, the court shall compare $100 to Michael's proportionate

---

3.    These figures are based on the 2007 tax table; however, the child support
      obligation worksheet used by the court in formulating its initial award also
      computed a monthly net income of less than $800.

4.    The emboldened area of the schedule was enacted in order to address the
      high obligations imposed upon low-income obligors when both parents'
      incomes are used to compute the obligation.  Report of the South Dakota
      Comm'n on Child Support, Dec. 2000, at 10-11.  It was found that including
      the custodial parent's income in the calculation when there is a low-income
      obligor has the effect of reducing the noncustodial parent's net income below
      a level sufficient for self-support.  *Id.*  Thus, when there is a low-income
      obligor, a calculation is made under the guidelines using both parents' net
      incomes.  *Id.*  Then, this amount is compared to the emboldened area within
      the guidelines using only the obligor's net income.  *Id.*  The lesser of these two
      amounts establishes the child support obligation.  *Id.*  This result insures

                                                              (continued . . .)

share using both parents' monthly net incomes. *Id*. "The lesser amount establishes the noncustodial parent's child support order." *Id*. Michael's proportionate share is $190 according to the child support obligation worksheet used by the court in establishing Michael's initial support obligation. Because $100 is less than $190, Michael's child support obligation should be $100.

[¶11.] However, SDCL 25-7-6.2 does provide for deviations from the schedule. But, "[t]here may be no deviation from the guidelines unless there is an entry of specific findings concerning factors for deviation listed in SDCL 25-7-6.10." *Schwab*, 505 NW2d at 756. Also, "[d]eviations from the support obligation schedule at SDCL 25-7-6.2 are possible, but must be raised by the parties in order to be considered by the trial court." *Midzak*, 2005 SD 58, ¶30, 697 NW2d at 741 (citing SDCL 25-7-6.10). Although Michael argued for a deviation from the schedule due to his incarceration, there was no argument made on behalf of Lynette for a deviation exceeding the schedule.

[¶12.] Here, Michael's support obligation under the schedule is $100, but the referee and court imposed an obligation of $190. However, neither the child support referee nor the circuit court entered findings supporting a deviation exceeding the schedule, and Lynette did not argue for such a deviation. The referee merely

_____

(. . . continued)
    that realistic and attainable child support obligations are established for low-income obligors. *Id*.

imputed Michael's prior income to him and concluded that there was no factual basis to reduce his $190 child support obligation.[5]

[¶13.] Thus, the circuit court erred by failing to follow the mandatory provisions of the South Dakota child support statutory scheme and by dismissing Michael's petition for modification of child support. Therefore, we reverse and remand this issue for the trial court to recalculate the child support award in accordance with the mandatory support obligation schedule in SDCL 25-7-6.2.

[¶14.] As discussed above, Michael did request a deviation from the schedule based upon his incarceration, but the circuit court denied a deviation. The circuit court concluded that Michael's incarceration was a voluntary act that reduced his income, so no deviation was warranted. Michael argues that the circuit court should have deviated from the child support schedule pursuant to SDCL 25-7-6.10(2). SDCL 25-7-6.10 provides in entirety:

> Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
> (1) The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent;
> (2) Any financial condition of either parent which would make application of the schedule inequitable. If the total amount of the child support obligation, including any adjustments for health insurance and child care costs, exceeds fifty percent of the obligor's monthly net income, it shall be presumed that the

---

5.  It appears that the referee only addressed Michael's argument that his incarceration required a deviation from his support obligation; however, "all aspects of child support [are] opened for examination" upon a petition for modification of prior trial court orders concerning the mutual child support obligations of the parties. Grunewaldt v. Bisson, 494 NW2d 193, 195 (SD 1992) (citation omitted).

amount of the obligation imposes a financial hardship on the obligor. This presumption may be rebutted based upon other factors set forth in this section;

(3) Any necessary education or health care special needs of the child;

(4) The effect of agreements between the parents regarding extra forms of support for the direct benefit of the child;

(5) The obligation of either parent to provide for subsequent natural children, adopted children, or stepchildren. However, an existing support order may not be modified solely for this reason; or

(6) The voluntary act of either parent which reduces that parent's income.

[¶15.]    Whether incarceration warrants or requires deviation of a child support obligation under SDCL 25-7-6.10 has not been addressed by any published South Dakota decision. In one case, however, this Court held that a circuit court order stating that a parent "did not have to make child support payments because of his incarceration" foreclosed the operation of the automatic child support statute enacted after the order was entered. Huth v. Hoffman, 464 NW2d 637, 639 (SD 1991). Thus, this Court has allowed an order permitting a deviation due to incarceration.

[¶16.]    On the other hand, this Court did not find an abuse of discretion when a circuit court refused a deviation from the schedule for a noncustodial parent who was attending school full-time. Kost v. Kost, 515 NW2d 209, 215 (SD 1994). In *Kost*, we reasoned that the noncustodial parent had voluntarily chosen to return to school and forego employment. *Id.* "Therefore, she ha[d] no basis upon which to request a deviation from her child support obligation." *Id.* This Court also addressed a request for a deviation under SDCL 25-7-6.10(2) in *Hawkins v. Peterson*, 474 NW2d 90, 94 (SD 1991). In *Hawkins*, "the referee considered father's statement that he had depleted his savings and had no other income than his social

security disability payments. The referee found that there was no basis for deviation." *Id*. On appeal, this Court found nothing in the record to indicate that the referee's finding was clearly erroneous. *Id*.

[¶17.] Furthermore, we affirmed a court's deviation exceeding the schedule in *Woehl v. Woehl*, when the noncustodial parent was terminated from employment due to his voluntary actions. 2002 SD 6, ¶15, 639 NW2d 188, 192. We stated in *Woehl*:

> Donald's primary, paramount obligation is the support of his four children. Instead of doing everything in his power to maintain his employment, Donald's deliberate, violent acts led to his firing. His firing was neither fortuitous nor beyond his control. Now he seeks to hoist the significant economic ramifications of that on his four children. This cannot be condoned. His actions were voluntary. There was no abuse of discretion in deviating from the child support schedule by using his former income to calculate his current child support obligation.

*Id*. (citations omitted).

[¶18.] Like in *Woehl*, Michael's actions leading to his incarceration were voluntary. He voluntarily pursued the illegal activities that led to his incarceration. Thus, our precedent suggests that there was no abuse of discretion in denying Michael a deviation below the child support schedule. Although there is a presumption that the obligation imposes a financial hardship on Michael because his obligation exceeds fifty percent of his monthly net income,[6] *See* SDCL 25-7-

---

6. Michael's monthly net income is $0. Thus, his obligation of $100 exceeds fifty percent of his monthly net income.

6.10(2), this presumption is rebutted by the voluntary act of Michael that reduced his income. *See id.*; SDCL 25-7-6.10(6).

[¶19.] Other state courts are divided over the effect of incarceration upon a person's child support obligations. *See In re* R.H., 686 NW2d 107, 108 (ND 2004) (citing Frank J. Wozniak, *Loss of Income Due to Incarceration as Affecting Child Support Obligation*, 27 ALR 5th 540 (1995)). For instance, "[s]ome courts have determined that incarceration does not justify reduction or suspension of child support payments regardless of whether an incarcerated parent has other available assets." Oberg v. Oberg, 869 SW2d 235, 236 (MoApp 1993) (citing Cole v. Cole, 590 NE2d 862 (OhioApp 1990) (per curiam) (additional citations omitted). *See also*, Davis v. Vance, 574 NE2d 330, 331 (IndApp 1991) (child support need not terminate during incarceration); State v. Nelson, 587 So2d 176, 178 (LaApp 1991); Mooney v. Brennan, 848 P2d 1020, 1023 (Mont 1993) (criminal conduct of any nature cannot excuse the obligation to pay support); Parker v. Parker, 447 NW2d 64, 65 (WisApp 1989) (obligor need not be excused of his child support because of a willful act that resulted in his imprisonment).

[¶20.] On the other hand, "some courts . . . have adopted the rule that, where a noncustodial parent is imprisoned for a crime other than nonsupport, the parent is not liable for child support payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments." *Oberg*, 869 SW2d at 237 (citing Nab v. Nab, 757 P2d 1231, 1238 (IdahoApp 1988); People ex rel. Meyer v. Nein, 568 NE2d 436, 437 (IllApp 1991); Pierce v. Pierce, 412 NW2d 291,

292 (MichApp 1987); Johnson v. O'Neill, 461 NW2d 507, 508 (MinnApp 1990)) (additional citations omitted).

[¶21.]    This Court's precedent suggests that a deviation or reduction of child support below the mandated minimum amount within SDCL 25-7-6.2 is not required because of incarceration. Our holdings in *Kost* and *Woehl* are aligned with those states denying a complete suspension of child support payments based on incarceration. For example, the North Dakota Supreme Court reasoned as follows:

> [I]f . . . an obligor chooses to buy a 'toy,' gamble his livelihood away, or fraudulently transfer his assets rather than meet his obligations, one would not seriously expect the courts to ignore, much less reward, such self-inflicted harm. The result is no different when an obligor enters prison by voluntarily violating the law. To be sure, any of these situations might make it difficult or even impossible to satisfy a child support obligation. Nonetheless, an obligor's errors do not justify punishing the obligor's innocent children. Our conclusion balances the interests of the child with the current, temporary inability to pay that 'recognizes the reduced income of the obligor as a result of incarceration but does not totally relieve the obligor of child support payments as a result of that incarceration.' Nor does the conclusion result in the obligor released from prison with an arrearage in child support so large that it is inconceivable the obligor will be able to earn enough to pay it.

A.M.S. ex rel. Farthing v. Stoppleworth, 694 NW2d 8, 12 (ND 2005) (internal citations and quotations omitted).

[¶22.]    This result appears to be an equitable one, i.e., it recognizes the reduced income of the obligor as a result of incarceration by imputing a minimum wage income instead of the obligor's prior income, but it does not totally relieve the obligor of child support payments as a result of that incarceration. Thus, we conclude that the trial court did not abuse its discretion in denying Michael a deviation based upon his incarceration.

**2. Whether Michael was denied due process or access to the courts when he was unable to obtain South Dakota law materials concerning modification of child support while incarcerated in a foreign jurisdiction.**

[¶23.]     Michael also argues that he was denied due process and meaningful access to the courts when he was unable to obtain South Dakota law while incarcerated in the Florida State Penitentiary. Michael claims he only had access to Florida and Federal case law in the law library at the Florida State Penitentiary, and he was denied access to non-Florida cases, statutes and court rules unless they were necessary to challenge judgments, sentences or prison conditions. Thus, Michael submits that the circuit court erred in dismissing his pro se petition for modification of child support due to his inability to access South Dakota law essential to his cause. He requests a remand for the circuit court to re-entertain his petition and allow him access to a South Dakota law library.

[¶24.]     The United States Supreme Court established in *Bounds v. Smith* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 US 817, 828, 97 SCt 1491, 1498, 52 LEd2d 72 (1977). However, *Bounds* does not guarantee inmates the wherewithal to file any and every type of legal claim, but requires only that they be provided with the tools necessary to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. Lewis v. Casey, 518 US 343, 355, 116 SCt 2174, 2182, 135 LEd2d 606 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

incarceration." *Id*. (emphasis in original). Thus, "*Lewis* limits the scope of the right of access to the courts to the filing of an action attacking a sentence or challenging conditions of confinement." Cody v. Weber, 256 F3d 764, 770 (8thCir 2001).

[¶25.] Also, "the plaintiff must show the lack of a library . . . hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." Sabers v. Delano, 100 F3d 82, 84 (8thCir 1996) (per curiam) (citing *Lewis*, 518 US at 351, 116 SCt at 2180, 135 LEd2d 606). For example, a prisoner might show "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Lewis*, 518 US at 351, 116 SCt at 2180, 135 LEd2d 606.

[¶26.] Michael's request for a remand is flawed in two respects. First, Michael has not demonstrated that the lack of South Dakota law actually hindered his efforts in pursuing his petition for modification of child support. He timely filed his petition and the referee and court reviewed his claims. Second, Michael's claim concerning a lack of access to the courts is limited, because he is not filing an action attacking a sentence or challenging conditions of his confinement. Instead, he is filing a general civil claim concerning child support.

[¶27.] In conclusion, the circuit court order dismissing Michael's petition for modification of child support on the merits and with prejudice is reversed and

#24145

remanded for the court to set a support order in congruence with the mandatory statutory schedule. However, Michael's remaining claims concerning deviation due to incarceration and due process were properly dismissed.

[¶28.] Affirmed in part, reversed in part and remanded.

[¶29.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.