SABERS, Justice
(concurring in result in part and dissenting in part).
[¶ 27.] I agree with the majority opinion’s determination that the parties raised the issue of deviation and therefore, the referee could consider a deviation. However, I disagree that the statute itself limits consideration of a deviation only to instances where a party raises the issue of a deviation. Admittedly, some of our prior case law suggested a deviation can only be considered if a party raises it. See Wagner, 2006 SD 31, ¶ 9, 712 N.W.2d at 657 (noting the statute “only allows a referee to address deviations when one has been ‘raised’ by a party and only upon the entry of specific findings following the hearing”); Midzak, 2005 SD 58, ¶ 31, 697 N.W.2d at 741 (noting neither party raised the issue of deviation, nor did the court enter specific findings on any of the statutory factors in SDCL 25-7-6.10). However, these cases only consider the issue in dicta and it has not been thoroughly analyzed. In the prior cases, the trial courts did not make the requisite findings of fact in order to deviate from the schedule. It is difficult to determine from the prior cases whether the failure to make specific findings was the determinative reason to deny a deviation. Regardless of the prior cases, this issue has not been squarely raised until now.
[¶ 28.] In determining the legislative intent of a statute, “[w]e give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject.” Rotenberger v. Burghduff, 2007 SD 7, ¶8, 727 N.W.2d 291, 294 (Rotenberger I) (quoting Chap *756 man v. Chapman, 2006 SD 36, ¶ 11, 713 N.W.2d 572, 576). The courts must confine themselves to the language the legislature used and cannot insert words into the statute that the legislature did not place there. Gloe v. Iowa Mut. Ins. Co., 2005 SD 29, ¶ 36, 694 N.W.2d 238, 250.
[¶ 29.] While Bartlett reads the statute that the court may only consider a deviation when a party raises the issue, the statute does not say only. The statute says the court shall consider the deviation when the party raises the issue, but does not otherwise direct a court when it can or cannot hear an issue concerning deviation. Considering our long history of safeguarding the best interest of the child, it would be inconsistent to say a court cannot consider a deviation when a litigant, especially one appearing pro se, does not raise the issue during the hearing. See Dahl v. Dahl, 2007 SD 64, ¶21, 736 N.W.2d 803, 808 (striking down a mutual agreement to seek no child support and noting such an agreement was not in the child’s best interest); Thomas v. Hauge, 2002 SD 12, ¶ 8, 639 N.W.2d 520, 521-22 (requiring noncustodial parent to pay child support on public policy grounds that require the protection of children despite an agreement between parents that waived child support in conformity with SDCL 25-7A-17); Estes v. Albers, 504 N.W.2d 607, 609 (S.D.1993) (noting a support agreement that is detrimental to the best interest of the child violates public policy and is void); Vander Woude v. Vander Woude, 501 N.W.2d 361, 363 (S.D.1993) (noting the parental obligation to support one’s children is statutory and a matter of public policy); Stack v. Stack, 369 N.W.2d 132, 136 (S.D.1985) (noting it is in the best interest of the child to be supported). Therefore, while a court “shall consider a deviation if a party raises the issue,” a court may also consider a deviation sua sponte when it is in the best interest of the child, and the court makes specific findings regarding any of the factors in SDCL 27-5-6.10.[6] See Brandriet v. Larsen, 442 N.W.2d 455, 462 (S.D.1989) (noting that a “motion seeking amendment of the child support provision in the decree opened for examination all aspects of child support”) (citing Brunick v. Brunick, 405 N.W.2d 633 (S.D.1987)) (emphasis added); see also State ex rel. Struck v. Struck, 526 N.W.2d *757 500, 502 (S.D.1995) (same); Grunewaldt v. Bisson, 494 N.W.2d 193, 195 (S.D.1992) (same).
[¶ 30.] Contrary to the majority opinion’s assertions, see supra ¶ 19, the standard of best interest of the child has been used in conjunction with support obligations. See Dahl, 2007 SD 64, ¶ 21, 736 N.W.2d at 808 (striking down a mutual agreement to seek no child support and noting such an agreement was not in the child’s best interest); Estes, 504 N.W.2d at 609 (noting a support agreement that is detrimental to the best interest of the child violates public policy and is void); Stack, 369 N.W.2d at 136 (noting it is in the best interest of the child to be supported). I agree with the majority opinion that the referee should not become an advocate for one party and with the remedy of canvassing the parties regarding deviations; however, the most important thing is that the referee gets it right. In other words, the referee must look out for the best interests of the child and ensure that the child’s needs are supported, especially when the parties are pro se and may not understand the deviations offered or available. Therefore, even though it is unnecessary to reach the issue in the current case since the parties raised the issue of deviations, the referee would have the power to consider a deviation, despite the absence of a request by one of the parties.
[¶ 31.] Bartlett’s second claim, one which the majority opinion largely changes to a different issue, is that the referee and circuit court erred when they deviated from the child support schedules. He argues that he cannot be held to his higher income when he did not quit his job in order to reduce his child support obligation, but quit in order to have a better quality of life. The referee found Bartlett voluntarily quit his former, higher paying job and took lower paying employment, but that he did not do so in order to reduce his child support. Even so, the referee determined the higher income should be used because quitting his job was a voluntary act. The referee interpreted the statute to mean that the act need not be for the purpose of reducing child support; it need only be undertaken voluntarily.
[¶ 32.] Instead of addressing solely the issue of whether a referee can deviate from the schedule when a reduction in income results from a voluntary change in employment, and not for the purpose of reducing child support obligation, the majority opinion addresses the procedure of arriving at the obligation when a referee deviates from the schedule. The majority opinion reaches this issue despite it never being raised by Bartlett. In fact, Bartlett declares that “imputation of income is a deviation.” Furthermore, he expressly says a referee can implement a deviation by imputing former income and comparing it to the lower obligation and comments that “[p]robably no one is too concerned over whether the deviation value is itemized as ... described.” He does not argue that the referee does not have the power to assign the former higher income when deciding to deviate. Nor does he argue that a referee must follow the procedure outlined by the majority opinion. He simply argues that the deviation was not raised by either party.
[¶ 33.] Nonetheless, the majority opinion concludes that the referee erred when it imputed the higher, former income. The majority opinion does not conclude that the deviation was in error because the voluntary act that lowered Bartlett’s income was not done to manipulate child support, as advocated by Bartlett. Instead, the majority opinion concludes the procedure was incorrectly followed and the referee’s decision must be reversed be *758 cause the lower income was not used to calculate child support first and then a deviation taken subsequent to the initial lower child support obligation.
[¶ 34.] The majority opinion argues that the “proper application of the statutes in this case would require calculating Bartlett’s monthly net income based on his actual earnings” and “[o]nly after this schedule calculation has been performed may a deviation, as set forth in SDCL 25-7-6.10, enter into the child support obligation equation.” Supra ¶ 12. Therefore, the majority opinion claims that the referee “incorrectly applied the child support statutes by initially using the imputed pri- or income of Bartlett to calculate support[.]” Supra ¶ 24. However, this argument is contrary to our prior case law. See Woehl v. Woehl, 2002 SD 6, ¶ 15, 639 N.W.2d 188, 192 (no abuse of discretion in deviating from the child support schedule by using [obligor’s] former income to calculate [the obligor’s] current child support obligation).
[¶ 35.] In support of its argument, the majority opinion cites Midzak, 2005 SD 58, 697 N.W.2d 733, and Gisi, 2007 SD 39, 731 N.W.2d 223. It claims these cases stand for the proposition that a circuit court is required to calculate the current child support obligation from the current net monthly income and then deviate from the result. These cases do not support this proposition.
[¶ 36.] In Midzak, the circuit court gave custody of the couple’s minor child to the father, but did not order any child support. 2005 SD 58, ¶ 11, 697 N.W.2d at 737. In reversing this decision, this Court stated that the parents’ combined monthly net incomes shall be used to determine the obligation. Nevertheless, the later sentence in that paragraph explains that deviations from the support obligation schedule are possible, but must be raised by the parties in order to be considered. Id. ¶ 30. No party raised a deviation, and the circuit court did not make findings regarding a deviation. Id. ¶ 31. Therefore, we reversed the circuit court’s failure to order child support. Id. ¶ 32. We did not explain or require the current combined monthly net income to be used prior to deviating from the child support schedule.
[¶ 37.] The majority opinion, citing Gisi, claims that we “require the trial court to calculate the monthly net income of the obligor first ...” Supra ¶ 13 (citing Gisi 2007 SD 39, ¶ 8, 731 N.W.2d at 226) (emphasis added). It goes on to state that “[o]nly after this calculation is made ... may the deviations ... be applied.” Id. (citing Gisi 2007 SD 39, ¶ 11, 731 N.W.2d at 227) (emphasis added). However, paragraph eight of Gisi requires a circuit court to use the monthly net income rather than monthly gross income. See 2007 SD 39, ¶ 8, 731 N.W.2d at 226. Furthermore, paragraph eleven explains a deviation is possible in certain circumstances, but not in Gisi because Lynette did not argue for a deviation exceeding the schedule and neither the referee nor the circuit court entered findings of fact supporting such deviation. Id. ¶ 11. No language in Gisi requires a circuit court to use the current monthly combined net income first and then apply the deviation.
[¶ 38.] In contrast, we have case precedent that supports a referee or circuit court’s decision to apply a deviation by imputing the former higher income when a parent has committed a voluntary act that reduces their income. In Woehl, 2002 SD 6, 639 N.W.2d 188, we did not require the circuit court or referee to first determine the child support obligation based on the current monthly income and then consider the deviation. Instead, we explained that because of his voluntary act that reduced his income, “there was no abuse of discre *759 tion in deviating from the child support schedule by using his former income to calculate his current child support obligation.” Id. ¶ 15, 639 N.W.2d at 192 (emphasis added).[7]
[¶ 39.] There is no support in the statute for the majority opinion’s interpretation. It claims the statute requires the computation of child support based upon the current net monthly income and then a deviation from the result. However, the statute requires that “[t]he child support obligation shall be established in accordance with the following schedule subject to such revisions or deviations as may be permitted pursuant to 25-7-6.1 to 25-7-6.18[.]” SDCL 25-7-6.2 (emphasis added). The statute continues to explain that “[e]x-cept as provided in this chapter, the combined monthly net incomes of both parents shall be used in determining the obligation .... ” Id. (emphasis added). The statute does not direct the circuit court to set the obligation and then deviate.
[¶ 40.] In any event, it seems that the majority opinion is preferring form over substance. In practice, the result will be the same. If a circuit court determines a deviation is warranted because of a party’s voluntary act that lowered their income, the circuit court will most inevitably look at the prior income from which the income was lowered. It seems counterintuitive to set the obligation using current, monthly combined net income and then essentially “pick” a higher or lower obligation. There needs to be an objective basis for assigning an obligation. Imputing former, higher income to a party whose voluntarily act reduces their income provides a basis for assigning the obligation. For example, under the rationale of the majority opinion, the referee would be justified in first determining the obligation from the current income, next determining the obligation from the former, higher income and finally assigning the higher obligation based on the former income due to its finding that a deviation is warranted. The result is the same and the procedure is not only not mandatory, but unwarranted.
[¶ 41.] Finally, Bartlett claims that Nauman v. Nauman, 320 N.W.2d 519 (S.D.1982), requires the voluntary action be for the purpose of reducing his child support.[8] Bartlett is correct that the case explains that one cannot voluntarily reduce one’s income “in order to avoid alimony and support payments.” However, Nau-man does not declare that the lower income should be used to determine child support if the voluntary reduction of income is for a purpose other than reducing child support. The case was simply explaining that Nauman could not lower his income to reduce his child support.
[¶ 42.] Our statutes and our case law are contrary to Bartlett’s argument. “It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascertained from the language expressed in the statute.” Huber v. Dep’t of Pub. Safety, 2006 SD 96, ¶ 14, 724 N.W.2d 175, 179 (additional citations omit *760 ted). The statute provides that a “deviation from the schedule ... shall be ... made only upon the entry of specific findings based upon ... [t]he voluntary act of either parent which reduces that parent’s income.” SDCL 25-7-6.10. The statute provides the act must be voluntary but does not require it to be for the purpose of reducing child support.
[¶ 43.] Furthermore, our case law does not require the act be for the purpose of reducing child support.[9] In Kost v. Kost, we imputed minimum wage income to the mother when she voluntarily reduced her income to return to school. 515 N.W.2d 209, 214-15 (S.D.1994).[10] In doing so, this Court explained that the duty of a parent to support his or her child is paramount and the child’s interest is the primary consideration. Id. at 214. We noted that “the first obligation of any parent is to provide child support, assuming he is physically and mentally capable. To hold otherwise would be to open the floodgates and allow parents who have child support obligations to circumvent these obligations under the guise of returning to school to enhance employment.” Id. at 215.
[¶ 44.] I agree with the conclusion that imputation of former, higher income is not automatic if the obligor commits a voluntary act which reduces his or her income. Indeed, the real problem in this case is it appears that the referee incorrectly assumed that it had no choice but to impute Bartlett’s higher income once it determined there was a voluntary act that allowed for a deviation under SDCL 25-7-6.10.[11] The statute requires the deviation to be considered, but does not mandate deviation. See SDCL 25-7-6.10 (“Deviation from the schedule in § 25-7-6.2 shall be considered (emphasis added). Where I part ways with the majority opinion on this issue is that a child support *761 referee may, in its discretion, impute the former, higher income to the obligor under SDCL 25-7-6.10(6). Absent an abuse of discretion, the decision whether or not to impute the former, higher income as a deviation would stand.
[¶ 45.] Because Bartlett’s actions were voluntary and the reduction of income was self-imposed, the court did not err when it recognized it could deviate from the child support schedule and impute Bartlett’s former, higher salary to determine his support obligation. However, the language in the referee’s report indicates it considered the imputation of the former, higher income mandatory. On the contrary, the referee or circuit court has discretion to deviate if the income is lowered by a voluntary act, but the imputation of the higher income is not mandatory. Therefore, I agree in result since the case should be remanded in order for the referee to consider the discretionary deviations. I dissent because the referee need not follow the procedure outlined by the majority opinion. As long as the deviation is supported, the procedure should not matter.

. Moreover, the referee gave an example of what would result from adoption of the position urged by father in this case:
Example # 1: This Referee hears several modification petitions every year in which a father has committed a crime, becomes incarcerated, loses his job as a result and has zero income, or virtually none. He then petitions for reduction of his child support obligation, and points out to the Referee that he has no income. Usually the mothers do not appear at such hearings, because they are receiving no child support anyway and have no immediate prospect of doing so. The Referee’s practice has invariably been to impute to the father the income he lost as a result of his incarceration, usually with the result there is no change in circumstances. The Referee then recommends dismissal of such petitions on the ground that the father’s lack of income was the result of his voluntary act, even though that act was not accompanied by an intent to reduce his child support, and even though the mother did not request deviation. Frequently these incarcerated fathers object to the Referee’s recommendation. In dozens of such objections over the years, no circuit court has overturned such a recommendation, even though no one requested deviation from the support schedule. If the rule in South Dakota were that deviation could not be considered in the absence of a request by a party, hundreds of South Dakota children and mothers every year would see their support reduced to zero because the obligor committed a crime. Many of these obligations, if unmodified, will at least continue to accrue as arrearages and eventually be paid, even if not paid today.
(Emphasis added).

. Like Bartlett, the father’s child support obligation in Gisi exceeds fifty percent of his monthly net income. Under SDCL 25-7-6.10(2), there is a presumption that the obligation imposes a financial hardship on the obligor, but the referee or circuit court can consider the voluntary act that reduced the income. See Gisi, 2007 SD 39, ¶ 18, 731 N.W.2d at 229; see also Woehl, 2002 SD 6, ¶¶ 14-15, 639 N.W.2d at 191-92.

. Bartlett emphasizes he quit his job in Huron near his children because working at the funeral home was highly stressful and he was “burn[ed] out.” However, the referee, who heard his testimony, found the "true motivation appears to be his decision to remarry, to a woman who lives in the Harrisburg area.”

. Iowa has refused to modify a support obligation when the reduction of income is voluntary and self-inflicted. See In re Marriage of Walters, 575 N.W.2d 739, 741-42 (Iowa 1998) (citing generally In re Marriage of Dawson, 467 N.W.2d 271, 275-76 (Iowa 1991)) (refusing to reduce child support obligation for obligor who quit job to finish education and take a job with lower pay); In re Marriage of Vettemack, 334 N.W.2d 761, 763 (Iowa 1983) (court unwilling to modify obligation for obli-gor who committed felony and was incarcerated but who had equity in home from which obligation could be satisfied); Ellis v. Ellis, 262 N.W.2d 265, 267-68 (Iowa 1978) (finding obligor's voluntary retirement at time when he still had substantial earning capacity to be voluntary and self-inflicted); Reed v. Reed, 260 Iowa 1166, 152 N.W.2d 190, 191 (1967) (refusing to modify support obligation when obligor voluntarily quit job to return to school); In re Marriage of Bales, 439 N.W.2d 228, 230 (Iowa Ct.App.1989) (declining to modify obligation when obligor quit job paying $15,000 per year to take job paying $5,900 per year).

. While this imputation of minimum wage was done in Kost under SDCL 25-7-6.4, citing SDCL 25-7-6.10, we noted that the lower court could have deviated by virtue of Karen's voluntary act which reduced her income. Id. at 215. Her former income before going back to school would have been minimum wage because she was not working during the marriage or prior to going back to school. Id. at 211.

.The majority opinion also suggests the referee's findings were inadequate to support the imposed deviation. However, in the referee report upon remand, the conclusions of law also note that "Melissa ... due to Lee’s unilateral reduction of his support payments ... is already in arrears in her rent payment.” I would submit that this supports the referee's implementation of a deviation.
Moreover, the majority opinion suggests that the referee simply imputed the higher income and did not consider the imputed higher income as a deviation. I agree the initial referee report does not use the word deviation and specifically finds that Bartlett waived his requested deviation. However, in the report of referee upon remand, the issue of deviation and the power to raise it sua sponte was addressed as a specific issue.