MEIERHENRY, Justice (on reassignment).
[¶ 1.] Lee O. Bartlett (Bartlett) petitioned to modify his child support obli *749 gation after relocating and reducing his income. Even though the child support referee found that Bartlett did not leave his employment for the purpose of reducing his child support obligation, the referee’s report set child support based on the imputed income from Bartlett’s prior job. The circuit court’s order adopted the referee’s report. Bartlett appeals. We reverse and remand.
FACTS
[¶ 2.] When Bartlett and Melissa Kauth (Kauth) divorced on November 30, 2004, Bartlett’s monthly child support obligation for their two children was set at $730.00 based on his gross annual income of $37,600.00 as a funeral home director in Redfield, South Dakota. Bartlett remarried in June of 2006. His new wife lived and worked in Harrisburg, South Dakota. She attempted to relocate and find employment in Redfield but was unable to do so. Bartlett quit his job at the funeral home in Redfield to move to Harrisburg, South Dakota. He obtained employment as a pizza restaurant manager making a gross annual income of about $18,000.00.
[¶ 3.] In April of 2006, Bartlett petitioned for reduction of his child support obligation because of his lower income. Bartlett requested a deviation under SDCL 25-7-6.10(2) based on his financial condition. Melissa Kauth did not specifically request an upward deviation. At the hearing, Bartlett appeared by telephone, and Kauth appeared in person. Neither party was represented by counsel. At the beginning of the hearing, the referee questioned Bartlett about leaving his job as a funeral home director for a less stressful career as follows:
Referee: Why did that job [as funeral home director] end?
Bartlett: I decided on a different career.
Referee: So did you voluntarily quit?
Bartlett: Yes, I did.
Referee: Ordinarily, sir, if someone’s income decreases as a result of their voluntary actions, in a child support proceeding we treat them as though they still had that same income. Can you tell me any reason, sir, why that should not be the case in this proceeding?
Bartlett briefly explained that he was unable to find employment as a funeral home director after relocating to Harrisburg, South Dakota. He also explained that his job as a funeral home director was very stressful and that the job had a high turnover rate. The referee denied Bartlett’s request to reduce the support and imputed Bartlett’s prior gross monthly income of $3,133.00 for purposes of calculating child support. Based upon the imputed income, the referee calculated Bartlett’s child support obligation at $697.00, plus $85.00 per month for his pro rata share of health insurance, increasing the total support obligation from the prior order of $730.00 to $782.00 per month.
[¶ 4.] Bartlett retained counsel and objected in circuit court to the referee’s report. The circuit court remanded the matter to the referee “for the sole and limited purpose of conducting further hearing on the specific and limited issue of whether Lee O. Bartlett voluntarily reduced his income for the intent and purpose of manipulating (i.e. reducing) his child support obligation.”
[¶ 5.] On remand, Bartlett was represented by counsel and Kauth appeared pro se.[1] Bartlett presented evidence that part of his decision to relocate and switch jobs was because of the stress of the funeral business and the extended hours he had to work. The referee noted that “[t]he moth *750 er did not request deviation based on the father’s voluntary reduction of his income.” Nevertheless, the referee determined that he had broad authority to raise deviations on his own and entered only one finding of fact as follows:
[Bartlett] admits he voluntarily quit his job. There was no evidence that he did so with the express intent of reducing his income. The Referee would point out, however, that he did not make any such finding in his original report either. ...
The referee went on to conclude that “[w]hether [Bartlett’s] intent in quitting his job was to reduce his child support obligation or not is irrelevant.”
[¶ 6.] Bartlett had requested a deviation based upon his financial condition pursuant to SDCL 25-7-6.10(2). This deviation presumes a financial hardship if the child support amount constitutes over fifty percent of the obligor’s net income. Although the evidence showed that Bartlett’s child support amount exceeded fifty percent of his actual net income, the referee made no finding on the deviation except to conclude Bartlett had waived it. The referee again imputed Bartlett’s prior income and recommended a monthly support amount of $782.00.
[¶ 7.] Bartlett once more objected to the referee’s recommendation because the referee had deviated from the child support schedule based upon a deviation neither party had requested and because the referee had automatically imputed Bartlett’s prior income. The circuit court adopted the referee’s findings of fact and conclusions of law as set forth in the referee’s reports from the original hearing and the remand. Bartlett raises the following issues on appeal:
ISSUES
1. Whether the circuit court erred in adopting the referee’s calculation of child support using Bartlett’s imputed income.
2. Wdiether a child support referee has authority to raise a deviation sua sponte.
STANDARD OF REVIEW
[¶ 8.] We review the decision to grant or deny child support under the abuse of discretion standard. Miller v. Jacobsen, 2006 SD 33, ¶ 18, 714 N.W.2d 69, 76 (citing Midzak v. Midzak, 2005 SD 58, ¶ 17, 697 N.W.2d 733, 738 (additional citations omitted)). When reviewing a child support referee’s findings of fact, we review for clear error, while conclusions of law are reviewed de novo. Wagner v. Wagner, 2006 SD 31, ¶ 5, 712 N.W.2d 653, 656 (quoting Mathis v. Mathis, 2000 SD 59, ¶ 7, 609 N.W.2d 773, 774). Additionally, when the lower court adopts the child support referee’s factual findings and legal conclusions, “we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law.” Id. Findings are not reversed for clear error “unless we are left with a definite and firm conviction a mistake has been made.” Id.
[¶ 9.] Issues regarding statutory interpretation are questions of law reviewed de novo. Rotenberger v. Burghduff, 2007 SD 7, ¶ 8, 727 N.W.2d 291, 294 (quoting State v. $1,010 in Am. Currency, 2006 SD 84, ¶ 8, 722 N.W.2d 92, 94). “Statutes are to be construed to give effect to each statute [ ] so as to have them exist in harmony. It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascertained from the language expressed in the statute.” Huber v. Dep’t of Pub. Safety, 2006 SD 96, ¶ 14, 724 N.W.2d 175, 179 (quoting $1,010 *751 in Am. Currency, 2006 SD 84, ¶ 8, 722 N.W.2d at 94 (citing In re Estate of Meland, 2006 SD 22, ¶6, 712 N.W.2d 1, 2) (additional citations omitted)).
DECISION

Child Support Calculated on Actual, Not Imputed Income

[¶ 10.] The referee and the circuit court misapplied and misinterpreted the statutes and prior case law by automatically imputing Bartlett’s previous wages. The referee and the circuit court applied a bright-line rule that if an obligor voluntarily takes a job that pays less than his prior job, his higher income from the prior job, must be imputed and used to calculate child support under the schedule. Neither the statutes nor our prior opinions support such a bright-line rule.
[¶ 11.] The statutory scheme in SDCL Chapter 25-7 governs child support calculations. The language of the statutes does not authorize automatically imputing a higher income when someone voluntarily takes a lower paying job. The only statute that even refers to imputed income is SDCL 25-7-6.4, which merely creates a rebuttable presumption that a parent is capable of being employed at minimum wage.[2] Since Bartlett’s income exceeded minimum wage this statute does not apply.
[¶ 12.] In all other cases, such as Bartlett’s, the child support schedule uses an obligor’s actual monthly net income as determined by SDCL 25-7-6.3 (income included in monthly gross income) and SDCL 25-7-6.7 (allowable deductions). A proper application of the statutes in this case would require calculating Bartlett’s monthly net income based on his actual earnings. The monthly net income of the parties is then combined to determine the support obligation under the schedule set forth in SDCL 25-7-6.2. Only after this schedule calculation has been performed may a deviation, as set forth in SDCL 25-7-6.10, enter into the child support obligation equation.
[¶ 13.] Thus, the statutes lay out a procedure wherein the initial step is to determine the current net income of the parties and scheduled support amount. Then, any requested deviations can be considered. We addressed the mandatory nature of the procedure in Midzak v. Midzak, 2005 SD 58, 697 N.W.2d 733 and Gisi v. Gisi, 2007 SD 39, 731 N.W.2d 223. In Midzak, the trial court failed to order child support. We reversed and remanded pointing out that “[t]he trial court is required to calculate the parents’ monthly net income ... as codified at SDCL 25-7-6.3 and 25-7-6.7.” Midzak, 2005 SD 58, ¶30, 697 N.W.2d at 740. We noted that “[deviations from the support obligation schedule at SDCL 25-7-6.2 are possible, but must be raised by the parties in order to be considered by the trial court.” Id. ¶ 30, 697 N.W.2d at 741. However, in order to even reach the possibility of a deviation, the referee must first compute the child support pursuant to SDCL 25-7-6.2 using the parent’s current income. In Gisi, we said the child support schedule statutes require the trial court to calculate the monthly net income of the obligor first, based upon the obligor’s current income, and only after this calculation is made, may the deviations in SDCL 25-7-6.10 be *752 applied. 2007 SD 39, ¶¶7-8, 11, 731 N.W.2d at 226-27.
[¶ 14.] The father in Gisi, asked for a downward deviation because he was incarcerated and had no income. The mother had not argued for an upward deviation. The referee and the court miscalculated the father’s obligation by using an imputed gross minimum wage rather than a monthly net income. We determined that a proper calculation under the schedule set the father’s obligation at $100.00 rather than the $190.00 ordered by the court. Neither the referee nor the court entered findings supporting a deviation. We found it was error for the referee to “merely impute” the father’s prior income.
[¶ 15.] Here, the referee and the circuit court failed to follow the procedures mandated by statute and articulated by this Court in Gisi See 2007 SD 39, ¶ 7, 731 N.W.2d at 226. In this case, like in Gisi the referee and the circuit court incorrectly considered a deviation without first calculating support. Clearly, this backwards application of the statutory deviation scheme is not contemplated by the statutes.
[¶ 16.] However, it is apparent from the record that the referee did not consider the higher imputed income as a deviation. In the first recommendation, the referee entered findings that Bartlett had waived his request for a deviation and Kauth had not requested a deviation. On remand from the circuit court, the referee again did not consider the imputed higher income as a deviation. Nevertheless, the referee alternatively found that if imputing the higher income was considered a deviation, then the referee had authority to raise the deviation sua sponte to sustain his recommended support amount. The referee, however, failed to enter specific findings based upon the deviation factors in SDCL 25-7-6.10 and failed to consider the deviation factor raised by Bartlett. The referee’s one finding was that “Bartlett admitt[ed] he voluntarily quit his job,” but did not quit “with the express intent of reducing his income.”[3]

Referee Cannot Raise Deviations Sua Sponte

[¶ 17.] Bartlett argues that the referee erred when he alternatively considered the deviation without either party raising the issue. The statute, SDCL 25-7-6.10, allows for a deviation as follows:
Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
(1) The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent;
(2) Any financial condition of either parent which would make application of the schedule inequitable. If the total amount of the child support obligation, including any adjustments for health insurance and child care costs, exceeds fifty percent of the obligor’s monthly net income, it shall be presumed that the amount of the obligation imposes a financial hardship on the obligor. This presumption may be rebutted based upon other factors set forth in this section;
(3) Any necessary education or health care special needs of the child;
*753 (4) The effect of agreements between the parents regarding extra forms of support for the direct benefit of the child;
(5) The obligation of either parent to provide for subsequent natural children, adopted children, or stepchildren. However, an existing support order may not be modified solely for this reason; or
(6) The voluntary act of either parent which reduces that parent’s income.
Pointing to the statutory language, “if raised by either party,” Bartlett claims that a deviation from the child support schedule cannot be considered unless a party raises the issue.
[¶ 18.] We agree with Bartlett that the referee may not raise a deviation sua sponte. The statute directs that “[deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party.” SDCL 25-7-6.10. The statute contemplates that the parties would raise deviations. There is no authority to support the premise that a child support referee has inherent authority to raise a deviation on his own. Gleaning such authority from SDCL 25-7-6.2 is dubious. The language of the statute neither authorizes nor prohibits a referee or court from considering a deviation sua sponte. The plain and simple statutory meaning merely requires the referee and/or the court to consider and enter specific findings if a party raises a deviation request.
[¶ 19.] The referee relied upon the broad equitable standard of “best interest of child” as giving him inherent authority to raise deviations sua sponte. The referee referred to this as “an affirmative duty to protect children even against the wishes or arrangements of parents.” The referee’s reliance on this standard is misplaced. The “best interest of the child” standard is not a standard articulated in the child support statutes. SDCL ch. 25-7. The guiding standard for child support is the child’s “standard of living” pre-divorce and the child’s actual needs. SDCL 25-7-6.2; Laird v. Laird, 2002 SD 99, ¶ 80, 650 N.W.2d 296, 301. The court’s broad equitable power to set child support has long been replaced by the mandatory child support statutes, the goal of which is to establish uniformity. Report of the South Dakota Commission on Child Support 13 (Dec.1985) (“The lack of uniform support guidelines in the State has led to substantial variations in the amount of support ordered to families in similar situations. The support obligation ordered oftentimes varies depending on the method used in determining what the support obligation should be.”).
[¶ 20.] Prior to enactment of mandatory child support schedules, the courts were guided by “the [child’s] necessary maintenance, education and support” and the parent’s “respective means.” SDCL 25-7-7 (1982), amended by 1986 SD Sess. Laws ch. 218, section 11, repealed by 1989 SD Sess. Laws ch. 220, section 19. The 1982 statute made “the parents of a child jointly and severally obligated to provide the necessary maintenance, education, and support of the child in accordance with their respective means.” Saint-Pierre v. Saint-Pierre, 357 N.W.2d 250, 259 (S.D.1984). In interpreting the 1982 statute, this Court applied several factors and set two explicit standards courts were to apply in determining child support. We stated, “The amount of child support depends upon the reasonable needs of the child, i.e., the reasonable expenditures suitable to the child’s circumstances at the time of the divorce and the payor’s financial situation.” Gross v. Gross, 355 N.W.2d 4, 7 (S.D.1984) (citations omitted). We instructed the lower courts to determine (1) an amount which would support the child’s circumstances and situation in life; and (2) *754 obligor’s ability to pay. Id. Thus, even before the mandatory schedules were enacted “the best interest of the child” was not the standard for child support determinations. See SDC 183 (1929) (requiring “support and education suitable to his circumstances”); see also SDCL 25-7-7 (1982) (requiring support “in accordance to their respective means”), amended by 1986 SD Sess. Laws ch. 218, section 11, repealed by 1989 SD Sess. Laws ch. 220, section 19.
[¶ 21.] Since 1986, the legislature has established mandatory child support guidelines. 1986 SD Sess. Laws ch. 218, section 11. In interpreting the 1986 version of the law, we determined that the statutes required courts to impose the guidelines and consider the deviation factors in every case. We said in Bruning v. Jeffries, “The question becomes whether Secretary (and hearing examiner) must consider these [deviation] factors in every case he hears. We conclude, from a reading of this statute in its entirety, that the legislature intended that these [deviation] factors be considered in each proceeding.” 422 N.W.2d 579, 580 (S.D.1988). Because the hearing examiner “chose not to consider any of the deviations” we reversed. Id. Even though the legislature later amended the statutes only to require consideration of the deviation factors raised by the parties, 1989 SD Sess. Laws ch. 220, section 10, it still required uniform application of the guidelines. 1989 SD Sess. Laws ch. 220, section
2. The 1986 statutory scheme and all subsequent amendments to the child support guidelines demonstrate a clear legislative intent to make the statutory procedures mandatory.[4]

Parties Responsibility to Request Deviations

[¶22.] As part of the statutory scheme, child support hearings under SDCL 25-7A-22 give parents an opportunity to request a change in child support without a formal circuit court proceeding. Even though the referee hearing may be less formal and the parties usually appear pro se, the referee must conduct the proceeding in a fair and impartial manner. Additionally, when referees or courts interject issues not raised by either party, they run the risk of losing their neutrality and becoming advocates for a party, if not in fact, then in appearance. The referee as an arm of the court cannot be an advocate for either party. See SDCL 25-7A-6 (a referee “is a member in good standing of the State Bar Association and is appointed by the court, pursuant to statute”). A referee or court that raises an issue sua sponte may compromise its position as a fair and impartial adjudicator.[5]
[¶ 23.] Whether to request a deviation with supporting evidence is the responsibility and decision of each party. SDCL 25-7-6.10. In Bartlett’s original petition for modification of child support Bartlett *755 requested a deviation from the support schedule because of his financial condition pursuant to SDCL 25-7-6.10(2). Kauth, on the other hand, did not initially request a deviation. However, during the referee hearing upon remand, Kauth, appearing pro se, argued for a deviation. While she did not specifically say “deviation,” she did argue for one as follows:
[T]he law states that if you voluntarily quit your job, whether it’s to reduce, purposely reduce child support or not, that you’re still responsible for the prior initial setup of child support.... I know that it’s tough to make things meet now that he doesn’t pay the child support when he use[d] to. I pay my rent a month late because I only make $15,000 a year, so it doesn’t spread very well. It’s very thin.
This statement constitutes an effective request for deviation. Additionally, the parties clearly litigated the issue in the various hearings during the course of the proceedings. Thus, the statutory requirement of being “raised by either party” was met. The referee was presented with the father’s request to reduce his child support and the mother’s request that it remain the same because the father voluntarily reduced his income. Nevertheless, the referee failed to consider the deviations as contemplated by the statutes and failed to enter sufficient findings as to the deviations.

Conclusion

[¶ 24.] We hold that the circuit court erred in adopting the referee’s report because the referee incorrectly applied the child support statutes by initially using the imputed prior income of Bartlett to calculate support and by not considering the deviation factors properly. We reverse and remand.
[¶ 25.] GILBERTSON, Chief Justice and KONENKAMP and ZINTER, Justices, concur.
[¶ 26.] SABERS, Justice, concurs in result in part and dissents in part.

. Kauth did not submit a brief in this matter.

. SDCL 25-7-6.4 provides as follows:
Except in cases of physical or mental disability, it shall be presumed for the purposes of determination of child support that a parent is capable of being employed at the minimum wage and his child support obligation shall be computed at a rate not less than full-time employment at the state minimum wage. Evidence to rebut this presumption may be presented by either parent.

. Even if a referee had inherent power to raise a deviation sua sponte, here the referee’s one finding in support of the deviation was insufficient to support the amount of the deviation.

. Although the legislature repealed SDCL 25-7-7 in 1989, SDCL 25-7-7 (1986), repealed by 1989 SD Sess. Laws ch. 220, section 19, the mandated child support guidelines continued with a newly adopted child support schedule, codified under SDCL 25-7-6.2. In the repealed language of SDCL 25-7-7 the legislature clearly provided that ''[t]hese guidelines shall be used in setting child support.” SDCL 25-7-7 (1986) (emphasis added), repealed by 1989 SD Sess. Laws ch. 220, section 19. The mandated child support guidelines continued with a new child support schedule codified under SDCL 25-7-6.2 (1989). The current version of SDCL 25-7-6.2 states: "The child support obligation shall be established in accordance with the following schedule ...." (Emphasis added).

. A better approach for a referee is one we have seen in other cases where the referee goes through each statutory deviation on the record and canvasses the pro se litigants as to whether they wish to raise any of them.