#24811-rev in pt, aff in pt & rem-JKM

**2008 SD 102**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARNIE JOANNE HOLLINSWORTH,                Plaintiff and Appellant,

v.

JACKIE DON HOLLINSWORTH,                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JACK R. VON WALD
Judge

\* \* \* \*

H.I. KING of
Tonner, Tobin & King, LLP                Attorneys for plaintiff
Aberdeen, South Dakota                and appellant.

GREGG MAGERA
JULIA M. DVORAK of
Siegel, Barnett & Schutz, LLP                Attorneys for defendant
Aberdeen, South Dakota                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
SEPTEMBER 29, 2008

OPINION FILED **10/29/08**

#24811

MEIERHENRY, Justice

[¶1.]        Marnie Hollinsworth Lammle (Mother) appeals the circuit court's order reducing child support owed by Jackie Hollinsworth (Father). Mother claims that the circuit court erred (1) by deviating downward from the child support schedule based on Mother's underemployment and (2) by not deviating upward based on Father's alleged voluntary act of reducing his income. We reverse the circuit court's decision on issue (1) and affirm on issue (2).

## FACTS

[¶2.]        The parties were married on May 2, 1987. Mother worked as a dental assistant until the birth of the parties' first child in 1994. She then left the workforce to care for the child. She remained out of the workforce until after the birth of the parties' second child in 1996, when she became employed part-time. During the parties' marriage, Mother earned her Bachelor's Degree in Biology and began study towards a Master's Degree in Education, which she completed after the divorce.

[¶3.]        The couple divorced in 2001. At the time of the divorce, they lived in Aberdeen, South Dakota. The divorce decree granted the parties joint custody of the two children, with Mother having primary physical custody. Father's child support obligation was set at $1,010.50 per month.[1]

---

1.    The trial court's worksheet originally calculated child support at $1,035 on January 3, 2001. This child support figure was based on Father's net monthly income of $4,232 and Mother's net monthly income of $789. The court determined Mother's net monthly income by substituting minimum wage. The parties, however, agreed that Father would pay Mother $1,010.50 in child support.

-1-

[¶4.]        In May of 2007, the custodial arrangement changed and the oldest

child decided to live with Father in Aberdeen, South Dakota.  Mother had remarried

and moved to Watertown, South Dakota, and had another child from the

subsequent marriage.  A stipulation and order changed custody of the parties' oldest

child and ordered that child support be recalculated pursuant to SDCL 25-7-6.23.[2]

[¶5.]        Shortly thereafter, Father petitioned for a referee hearing to re-

calculate the child support amount.  At the time of the referee hearing, Mother

worked part-time for South Dakota Game, Fish and Parks at less than minimum

wage.  Consequently, the referee imputed her income at minimum wage in the

amount of $884 gross monthly income.  The referee determined that Father's gross

monthly income was $5,859.  Based on these figures, the referee set Father's child

support obligation at $752 per month.[3]  Both parties had requested a deviation.

---

2.      According to SDCL 25-7-6.23,

> If the parents have two or more children between them and each
> parent has primary physical custody of at least one child, the child
> support obligation shall be determined by computing the amount of
> each parent's respective support obligation for the children in the other
> parent's physical custody, and the support obligations shall be offset in
> determining a monthly support obligation.  If one or more of the
> children are receiving assistance from the department as provided in §
> 28-7A-7, and in lieu of the offset, each parent shall be obligated to pay
> the respective support obligation amount to the other parent.

*Id.*

3.      The referee calculated that Mother made 13% and Father made 87% of the
$6,743 total gross monthly income between the parties.  The child support
obligation for this amount was $1,079 according to the guidelines set forth in
SDCL 25-7.  Mother's obligation of 13% equaled $150 in child support per
month for the child in Father's custody.  Father's obligation of 87% equaled
$939 in child support per month for the child in Mother's custody.  After
subtracting Mother's obligation, Father's child support obligation was $789
per month.  Finally, because Father paid for the children's health insurance,

(continued . . .)

Mother requested a deviation per SDCL 25-7-6.10(5) because of her obligation to support her subsequent child. Father requested a deviation per SDCL 25-7-6.10(6) claiming that Mother voluntarily reduced her income by not working full-time utilizing her Masters degree. The referee denied both parties' deviation requests in its report to the circuit court.

[¶6.]     Father objected to the referee's report in circuit court. His objections relevant to this appeal were: (1) that his income had decreased because his job status had changed since the referee hearing, and (2) that the referee erred in imputing minimum wage to Mother rather than imputing a salary more suitable to her education level. Mother did not object to the referee's first report.

[¶7.]     To show his reduced income, Father presented evidence to the circuit court that his previous employer, a construction contractor, had terminated his employment for no fault of Father's, but as part of a business decision. As part of Father's termination, his employer offered to pay 90 days severance pay plus a $25,000 bonus if Father signed a contract not to compete as a construction contractor. Father decided to forgo the severance pay offer and start his own construction company in competition with his previous employer during the 90-day period.

[¶8.]     Ruling on Father's objections, the circuit court rejected the referee's report and remanded the matter to the referee for a new hearing with directions (1)

_____

(. . . continued)
     Mother's pro rata share of $37 (13%) was subtracted from Father's obligation. After subtracting Mother's portion of the health insurance, the referee calculated Father's total obligation at $752 per month.

to consider Father's reduced income and (2) to consider whether a deviation should be granted for the voluntarily reduction of income by either party, i.e. Mother's underemployment and Father's decision to forego the severance pay. As a result of the new hearing, the referee issued a second report in which the referee calculated Father's monthly child support obligation at $552 based on his annual income of $70,000.[4] The referee again denied both parties' requests for deviation.

[¶9.] Father objected to the referee's second report claiming that the referee erred by not granting a deviation based on Mother's underemployment per SDCL 25-7-6.10(6). Likewise, Mother objected to the referee's second report on the basis that the referee should have deviated from the schedule because Father voluntarily reduced his income per SDCL 25-7-6.10(6) by rejecting the severance pay and non-compete agreement.

[¶10.] Upon review, the circuit court modified the referee's report to grant Father's deviation request. The circuit court utilized SDCL 25-7-6.10(6) to determine that Mother was voluntarily underemployed. The court determined that Mother voluntarily elected to work part-time for approximately $10,000 per year rather than to work at a higher paying job more commensurate with her Master's

---

4. In the second report, Father's gross monthly income was calculated at $4,345. Mother's income remained imputed at $884. The referee calculated that Mother made 17% and Father made 83% of the $5,229 total gross monthly income between the parties. According to the Child Support Guidelines, the child support obligation equaled $910 per month. Mother had to pay 17% or $155 of child support per month for the child in Father's custody. Father's obligation of 83% was $755 in child support per month for the child in Mother's custody. After subtracting Mother's obligation, Father had a child support obligation of $600 per month. After Mother's portion of the children's health insurance, $48, was subtracted, Father's obligation amounted to $552 per month.

Degree in Education. Based on Mother's underemployment, the court granted

Father a downward deviation of $152 resulting in a child support obligation of $400

for Father. The circuit court affirmed the referee's denial of Mother's deviation

request. Mother appeals raising two issues.

## ISSUES

1) Whether the circuit court erred when it granted Father a deviation based upon Mother's voluntary underemployment.

2) Whether the circuit court erred by not granting a deviation based on Father's voluntary rejection of his employer's severance pay offer.

## STANDARD OF REVIEW

[¶11.]       "We review the decision to grant or deny child support under the

abuse of discretion standard." Kauth v. Bartlett, 2008 SD 20, ¶8, 746 NW2d 747,

750 (citing Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76) (additional

citations omitted). When reviewing issues of statutory interpretation, we review de

novo. *Id.* ¶9, 746 NW2d at 750 (citations omitted). "Statutes are to be construed to

give effect to each statute [ ] so as to have them exist in harmony. It is a

fundamental rule of statutory construction that the intention of the law is to be

primarily ascertained from the language expressed in the statute." *Id.* ¶9, 746

NW2d at 750-51 (citing Huber v. Dep't of Pub. Safety, 2006 SD 96, ¶14, 724 NW2d

175, 179 (quoting State v. $1,010 in Am. Currency, 2006 SD 84, ¶8, 722 NW2d 92,

94 (additional citations omitted))).

## ANALYSIS

*Child Support Deviation Based on Mother's Voluntary Income Reduction.*

[¶12.]    The circuit court granted a deviation for Father based on Mother's voluntary reduction in income pursuant to SDCL 25-7-6.10(6). Mother argues that the circuit court abused its discretion in granting this deviation. Mother further asserts that the statute does not apply to her situation because she had not decreased her income. Father, however, contends that the deviation applies because Mother's underemployment is the equivalent of a voluntary reduction of income.

[¶13.]    The obligation to support one's children "is not only a matter of public policy, but is also statutory." Kost v. Kost, 515 NW2d 209, 214 (SD 1994) (citing SDCL 25-5-18.1; SDCL 25-7-6.1). The South Dakota support obligation schedule establishes monthly child support payments based on parental income. SDCL 25-7-6.2. This statute requires that "[e]xcept as provided in this chapter, the combined monthly net incomes of both parents shall be used in determining the obligation and divided proportionately between the parents based upon their respective net incomes." *Id.* The South Dakota Legislature enacted the provisions in Chapter 25-7 to provide guidance in child support determinations.

[¶14.]    Chapter 25-7 provides additional guidance for calculating child support in special situations. Each parent is presumed capable of earning minimum wage. SDCL 25-7-6.4 "[I]t shall be presumed for the purposes of determination of child support that a parent is capable of being employed at the minimum wage and his child support obligation shall be computed at a rate not less than full-time employment at the state minimum wage." *Id.* In addition, SDCL 25-7-6.10 provides six factors that may be considered in order to deviate from the child

support schedule. One of the factors for consideration is "[t]*he voluntary act of either parent which reduces that parent's income.*"[5] SDCL 25-7-6.10(6) (emphasis added). But, "[t]here may be no deviation from the guidelines unless there is an entry of specific findings concerning factors for deviation listed in SDCL 25-7-6.10." Schwab v. Schwab, 505 NW2d 752, 756 (SD 1993) (citing Johnson v. Johnson, 451 NW2d 293 (SD 1990)). Mother argues that the circuit court erroneously allowed a deviation for Father under SDCL 25-7-6.10(6) based on a finding that Mother had voluntarily reduced her income. We have previously affirmed deviations from the

---

5. SDCL 25-7-6.10 provides the following factors to allow a deviation from the child support schedule:

> Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
>
> (1) The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent;
>
> (2) Any financial condition of either parent which would make application of the schedule inequitable. If the total amount of the child support obligation, including any adjustments for health insurance and child care costs, exceeds fifty percent of the obligor's monthly net income, it shall be presumed that the amount of the obligation imposes a financial hardship on the obligor. This presumption may be rebutted based upon other factors set forth in this section;
>
> (3) Any necessary education or health care special needs of the child;
>
> (4) The effect of agreements between the parents regarding extra forms of support for the direct benefit of the child;
>
> (5) The obligation of either parent to provide for subsequent natural children, adopted children, or stepchildren. However, an existing support order may not be modified solely for this reason; or
>
> (6) The voluntary act of either parent which reduces that parent's income.

*Id.*

support obligation schedule based on voluntary reduction of income; however, none of our prior cases dealt with voluntary underemployment.

[¶15.]     In a recent case, *Kauth v. Bartlett*, we determined that "[t]he language of the statutes does not authorize automatically imputing a higher income when someone voluntarily takes a lower paying job. The only statute that even refers to imputed income is SDCL 25-7-6.4, which merely creates a rebuttable presumption that a parent is *capable* of being employed at minimum wage." 2008 SD 20, ¶11, 746 NW2d 747, 751. The circuit court imputed Bartlett's former income for child support calculation rather than using his current lower income. *Id.* ¶12, 746 NW2d at 751. We reversed and remanded, holding that the support obligation must first be calculated using the parties' current incomes. *Id.* "Only after this schedule calculation has been performed may a deviation, as set forth in SDCL 25-7-6.10, enter into the child support obligation equation."[6]  *Id.*

[¶16.]     We have not had the occasion to consider the statute's application in a situation where a parent has consistently opted to work part-time. The evidence here showed that Mother had regularly worked part time in order to spend more time with her children. She did this before the divorce from Father and continued her reduced work schedule since the divorce, remarriage, and birth of another child.

---

6.     The procedure for child support calculation is mandatory. Kauth v. Bartlett, 2008 SD 20, ¶13, 746 NW2d 747, 751. "Thus, the statutes lay out a procedure wherein the initial step is to determine the current net income of the parties and scheduled support amount. Then, any requested deviations can be considered." *Id.*; *see also* Gisi v. Gisi, 2007 SD 39, 731 NW2d 223; Midzak v. Midzak, 2005 SD 58, 697 NW2d 733.

[¶17.]     The South Dakota child support statutes do not specifically address voluntary underemployment. *See generally* SDCL 25-7. SDCL 25-7-6.10(6) only allows for a deviation in instances where "[t]he voluntary act of either parent [ ] *reduces* that parent's income." [7] *Id.* (emphasis added). The circuit court interpreted the statutory language broadly by expanding the definition of "reduc[ing] that parent's income" to include voluntary underemployment. Specifically, the circuit court interpreted voluntary reduction of income to include voluntarily maintaining part-time employment rather than securing full-time employment commensurate with Mother's advanced degree. In order to determine if the statutory language encompasses a situation of underemployment, we look at its plain meaning. *See* State v. Moss, 2008 SD 64, ¶15, 754 NW2d 626, 631 (citing Goetz v. State, 2001 SD 138, ¶15, 636 NW2d 675, 681; In re West River Elec. Ass'n, Inc., 2004 SD 11, ¶15, 675 NW2d 222, 226). Specifically, at issue is whether the legislature, by using the term "reduces," limited the deviation to those instances where a parent voluntarily lowered his/her income from a prior higher income; or, whether the legislature intended to include situations where a parent earned less than he/she could have earned had the parent obtained other employment or income opportunities equal to the parent's training or skills.

[¶18.]     Other states have included voluntary underemployment as a factor in child support determinations. For example, the Alaska Rules of Civil Procedure

---

7. The Merriam-Webster Online Dictionary in part defines "reduce" as "to diminish in size, amount, extent, or number." "Reduce," Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/reduce (last visited Oct. 18, 2008).

allow courts to use the potential income of underemployed parents in child support determinations under certain circumstances.[8] AlaskaRCivP 90.3. Delaware, Florida, Kentucky, and Washington have similar rules or statutes. *See* De R FamCt RCP Rule 501; Fla Stat Ann 61.30 (2)(b); KyRevStatAnn 403.212(2)(d); WashRevCodeAnn 26.19.071(6). These states recognize that "a court may impute income to a party it finds to be voluntarily unemployed or underemployed." McKinney v. McKinney, 257 SW3d 130, 134 (KyCtApp 2008); *see also* Sawicki v. Haxby, 186 P3d 546 (Alaska 2008); Strassner v. Strassner, 982 So2d 1224 (FlaDistCtApp 2008).

[¶19.] Had the South Dakota Legislature intended to include voluntary underemployment as a factor, it could have specifically done so as other states have. The child support schedules are reviewed every four years and analyzed with public policy considerations taken into account.[9] SDCL 25-7-6.12. We have to assume

---

8. Alaska Rule of Civil Procedure 90.3 (a)(4) provides:
   (4) Potential Income. The court may calculate child support based on a determination of the *potential income of a parent who voluntarily and unreasonably is unemployed or underemployed.* A determination of potential income may not be made for a parent who is physically or mentally incapacitated, or who is caring for a child under two years of age to whom the parents owe a joint legal responsibility. Potential income will be based upon the parent's work history, qualifications, and job opportunities. The court also may impute potential income for non-income or low income producing assets.
   *Id.* (emphasis added).

9. According to SDCL 25-7-6.12, "[t]he Governor shall, commencing in the year 2000, establish quadrennially a commission on child support. The commission shall review the provisions of this chapter, shall report its findings to the Governor and the Legislature, and may propose amendment thereof to the Legislature." *Id.*

that if the legislature wanted courts to consider underemployment and to impute higher incomes, it would have included such a provision in the law just as it did with the provision imputing minimum wage. In this case, the ultimate result of the downward deviation was to lower the amount of support and standard of living for the child. It is unlikely that the legislature contemplated such a result. We conclude that since the legislature used the word "reduces," it meant to limit the deviation to those instances where a parent regularly made a higher income and purposely lowered it.

[¶20.]     The evidence before the referee was that Mother's income had changed very little since the divorce. In fact, her income was slightly higher in her current part-time position than her earnings at the time of the divorce. Because her income was less than minimum wage for the child support calculation, the referee imputed minimum wage pursuant to SDCL 25-7-6.4. The record is unclear as to Mother's current potential income. Even if the statute allowed a court to consider underemployment as a voluntary reduction of income, the statute requires specific findings to support a deviation. SDCL 25-7-6.10. Here, the circuit court provided no basis or explanation to support the amount of $152 as a downward deviation from the schedule.

[¶21.]     Thus, we determine that the South Dakota child support provision SDCL 25-7-6.10(6), which allows the referee/circuit court to consider a deviation based on a finding of voluntary reduction of income, does not allow a deviation in this case where Mother has not actually reduced her income. Mother may have the potential to earn more based on her advanced degree, but the legislature has not

provided guidance on if, or how, the courts are to consider potential income or underemployment. Consequently, the circuit court erred in determining that Mother had voluntarily reduced her income and in granting a downward deviation to Father's child support obligation.

*Child Support Deviation Based on Father's Voluntary Income Reduction.*

[¶22.] Mother argues that Father voluntarily reduced his income by engaging in direct competition with his former employer. Father contends that he did not voluntarily decrease his income by competing with his former employer during a 90-day period after his termination. The circuit court agreed with Father and did not deviate from the child support schedule. Mother argues that the circuit court abused its discretion by not granting the deviation.

[¶23.] Shortly after Father gained custody of the oldest child, Father's employer terminated him and offered to provide him with 90 days of severance pay plus a $25,000 bonus so long as Father signed a contract not to compete with the employer. Father chose, instead, to set up his own construction business in competition with his previous employer. Because Father failed to sign the agreement not to compete, he did not receive his base compensation, benefits, or any additional compensation for the 90-day period.

[¶24.] Mother concedes that Father's termination was not his fault. His former employer simply made a business decision to go a different direction with the company that did not include employment for Father. Father did, however, make the voluntary decision to forgo the former employer's non-compete contract during the 90-day period following his employment. Because Father did not sign

the non-compete contract and began to compete with his former employer, the former employer did not pay Father after September 28, 2007.

[¶25.] The referee determined that Father would make $70,000 per year following his termination and applied this income as of September 1, 2007.[10] Mother argues that Father's voluntary decision to compete with his previous employer equates to a voluntary decrease in income under SDCL 25-7-6.10(6). The circuit court disagreed, determining that Father's termination was not voluntary and his decision to compete with the employer was not a voluntary act to decrease his income. In denying the deviation for Father's voluntary reduction in income the circuit judge determined:

> I can't find that there is any evidence to really support a
> voluntary reduction of [Father's] income. I think it was, he was
> at the mercy of his employer. They had the power and the
> control to call the shots. They called it and he came out on the
> short end.

Based on the evidence, Mother has failed to show that the circuit court abused its discretion in denying her request for deviation.

[¶26.] We reverse on issue one, affirm on issue two and remand to the circuit court to enter an order in conformity with this opinion.

[¶27.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

10. Although the record indicates Father's lower income did not commence until September 28, 2007, Mother did not appeal the effective date of the order.