#28057-r-JMK
**2017 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THERESA SIGLER,                                        Plaintiff and Appellant,

    v.

ARRON SIGLER,                                        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MATTHEW M. BROWN
Judge

\* \* \* \*

PATRICIA A. MEYERS
Rapid City, South Dakota                             Attorney for plaintiff and
                                                     appellant.


ROBERT J. GALBRAITH of
Nooney & Solay, LLP
Rapid City, South Dakota                             Attorneys for defendant and
                                                     appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **12/13/17**

#28057

KERN, Justice

[¶1.] At the time of their divorce in May 2011, Arron and Theresa Sigler stipulated that Theresa would have primary physical custody of their child T.S. In March 2016, Arron filed a motion for joint custody of T.S., a visitation schedule, and a shared parenting child support cross-credit under SDCL 25-7-6.27. The circuit court granted Arron joint custody and the cross-credit because T.S. resided with Arron seven out of every fourteen days. In making this decision, the court found that application of the cross-credit would not have a "substantial negative effect" on T.S.'s standard of living and that Theresa's budget showed she lived beyond her means. The circuit court reduced Arron's net monthly child support payment from $442 per month to $25 per month. Theresa appeals, arguing the circuit court made erroneous findings of fact and abused its discretion by granting the cross-credit. We reverse and remand for further proceedings.

## Facts and Procedural History

[¶2.] On May 31, 2011, Theresa and Arron Sigler divorced. The parties had three children[1] and agreed by stipulation that primary physical custody of J.S. (born October 1, 1999) would go to Arron and Theresa would take primary physical custody of T.S. (born March 5, 2004). The court ordered Arron pay $361 per month in child support to Theresa.

[¶3.] Following the divorce, Theresa had another child, J.F. J.F.'s father is obligated to pay $630 in child support payments per month but is more than

---

1. Arron also took primary physical custody of a third child born of the marriage, J.S. (born March 27, 1994), who has reached the age of majority.

-1-

$11,000 in arrears. On January 23, 2015, Theresa filed a petition to modify child support, and on February 27, 2015, the parties appeared telephonically before the court-appointed referee Lee Ann Pierce (Referee) for hearing on the petition. Theresa sought an upward deviation due to costs associated with raising J.F., who was then seventeen months old. In response, Arron requested a downward deviation of his child support obligation, citing the fact that T.S. now resided with him approximately 50% of the time.

[¶4.] The Referee determined that "[c]ircumstances [had] changed substantially since the entry of the previous order in that the parties' incomes [had] changed." In analyzing whether to deviate downward from that number, the Referee examined the gross incomes and respective financial conditions of the parties. Arron earned approximately $83,911 per year with an adjusted monthly gross income of $4,600 and contributed $490 per month toward his retirement accounts. Theresa earned approximately $25,980 per year with an adjusted monthly gross income of $1,789, and she made no contributions toward retirement. The Referee found that the parties' combined adjusted gross income totaled $6,389, with Theresa contributing 28% and Arron contributing 72%. The Referee identified that two children were to be supported and that the child support obligation of the parties for each child was $1,068.

[¶5.] The Referee then calculated that Theresa should pay $299 per month in child support for J.S. based on her 28% share and that Arron should pay $769 per month in child support for T.S. based on his 72% share. The Referee declined to deviate upward despite Theresa having another child, J.F., in her care. Likewise,

the Referee declined to deviate downward even though T.S. spent approximately seven out of every fourteen nights with Arron. The Referee also considered the parties' disparate incomes. Pursuant to SDCL 25-7-6.16, the Referee credited Arron with $28 of Theresa's pro rata share of the cost of the children's health insurance, leaving Arron with an obligation of $442 per month. Arron appealed the Referee's decision to the circuit court. On June 8, 2015, the circuit court affirmed, adopting the Referee's findings of fact and conclusions of law.

[¶6.]        On March 27, 2016, Arron filed a motion for change of child custody, support, and visitation. Arron sought to formalize the parties' arrangement because at the time of the motion, T.S. divided her time equally between her parents. Arron requested that the circuit court order a shared-parenting custody arrangement and apply a shared parenting child support cross-credit under SDCL 25-7-6.27, which provides in part:

> If a custody order by the court, contains a detailed shared parenting plan which provides that the child will reside no less than one hundred eighty nights per calendar year in each parent's home, and that the parents will share the duties and responsibilities of parenting the child and the expenses of the child in proportion to their incomes, the court may, if deemed appropriate under the circumstances, grant a cross credit on the amount of the child support obligation based on the number of nights the child resides with each parent. . . .
>
> . . . .
>
> In deciding whether a shared parenting child support cross credit is appropriate, the court shall consider whether it would have *a substantial negative effect on the child's standard of living*.

(Emphasis added).

[¶7.]        The motion was heard on October 14, 2016, before a different circuit judge, who took the case on reassignment. At the hearing, the parties testified and

introduced exhibits detailing their financial situations. Theresa introduced Exhibit A, which listed her monthly expenses totaling $2,989.68 and balances still owed to creditors, including: $2,000 for her dental care; $791 in clothing items from Kohl's primarily for T.S.; $1,900 in medical bills; $1,501 in orthodontic bills for T.S.; and $600 for a new dryer from Sears. Theresa attributed $350 of her budget to daycare expenses for J.F. Exhibit 4 listed the adjusted monthly gross incomes of the parties, which had not changed since the Referee's report in 2015. Theresa testified that she made up the more than $1,000-per-month shortfall by borrowing from her line of credit and paying off the line with her yearly tax return refund.

[¶8.] At the conclusion of the hearing, the circuit court asked the parties whether they wished to submit proposed findings of fact and conclusions of law. The parties agreed to do so and set October 28 as the deadline for simultaneous submission of their proposals. On October 28, Arron submitted his proposed findings of fact and conclusions of law. On November 8, Arron wrote to the circuit court to indicate that Theresa had neither submitted proposals of her own nor objected to Arron's. On November 10, Theresa submitted her proposals.

[¶9.] On November 14, 2016, the circuit court issued its findings of fact and conclusions of law. The court, in a letter to the parties' counsel, indicated that its findings of fact and conclusions of law "were entered not as a default/waiver but on the merits." The court, in its findings of fact, acknowledged that "[t]here has been no substantive change in either parties' [sic] income calculations since the Report of [the] Referee on March 4, 2015." Nevertheless, in its conclusions of law, the court allowed Arron a child support cross-credit and ordered joint physical custody of T.S.

In so doing, the court reduced Arron's child support payment to Theresa from $442 per month to $25 per month. The court concluded that "[i]t is beyond any deviation [the circuit court] could allow to require [Arron] to pay $769.00 per month for a child who resides with him 182.5 days each year." The court further found that "[e]ven without incurring any costs for the care of [T.S.], [Theresa] lives beyond her means." The court highlighted Theresa's testimony that she could only maintain her current standard of living if she obtained additional employment. The court held that doing so would not have a substantial negative effect on T.S.'s standard of living and granted Arron's motion.

[¶10.] Theresa appeals, arguing the circuit court made erroneous factual findings and abused its discretion by applying the shared parenting cross-credit in this case.

### Analysis and Decision

[¶11.] We review the decision to modify a child support obligation for an abuse of discretion. *See Kauth v. Bartlett*, 2008 S.D. 20, ¶ 8, 746 N.W.2d 747, 750. "An abuse of discretion is a 'discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 14, 826 N.W.2d 627, 633 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822). Findings of fact are reviewed for clear error. *Id.* ¶ 15. "As a result, this Court 'will overturn the [circuit] court's findings of fact on appeal only when a complete review of the evidence leaves this Court with a definite and firm conviction that a

mistake has been made.'" *Id.* (quoting *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843).[2]

[¶12.] Theresa argues that even if we accept the circuit court's factual findings, they fail to support the circuit court's decision to apply the cross-credit. Specifically, Theresa contends that application of the cross-credit will have a "substantial negative effect on the child's standard of living." *See* SDCL 25-7-6.27. Theresa argues that T.S.'s basic standard of living will decline under such an arrangement. In support of this contention, Theresa cites *Ochs v. Nelson*, 538 N.W.2d 527 (S.D. 1995), and *Schieffer*, 2013 S.D. 11, ¶ 48, 826 N.W.2d at 643.[3]

[¶13.] *Ochs* concerned parents with disproportionate standards of living. The mother earned $12,681 per year while the father's average annual salary was $62,345. *Ochs*, 538 N.W.2d at 528. Additionally, the father possessed an 80% interest in a corporation with an "average yearly net income over the last three years [of] $116,905" and "had accumulated retained earnings exceeding one-half million dollars." *Id.* Compared to the mother's modest apartment, the father owned a "quality home in the fashionable area of Sioux Falls" and a "vacation cabin in the Black Hills[.]" *Id.* The circuit court calculated the father's child support obligation

---

2. On appeal, Arron argues that failure to timely file proposed findings of fact and conclusions of law under SDCL 15-6-52(a) limits our scope of review. *See Shoop v. Shoop*, 460 N.W.2d 721, 724 (S.D. 1990). However, the court specifically noted that its findings and conclusion "were entered not as a default/waiver but on the merits." Because the court did not penalize Theresa for her late submission, we decline to address the question.

3. Theresa also cites *Anderson v. Anderson*, 2015 S.D. 28, ¶ 14, 864 N.W.2d 10, 16-17. However, as Arron observes, the case is inapposite because in *Anderson*, the father had not been paying any child support. *Id.*

by extrapolating from the guidelines, arriving at a figure higher than that listed in the statute. *Id.* at 530. We affirmed the circuit court's decision, noting that a court should consider both the child's needs *and* standard of living. *Id.*

[¶14.]　　　*Schieffer* also involved parents earning disproportionate annual incomes ($2,115,080 for the father and $105,080 for the mother). However, the circuit court elected not to deviate from the child support obligation schedule's ceiling of $2,963, which the father bore 95% of the responsibility for, or $2,815, and impose the mother's requested "base" child support award of approximately $9,200 per month. *Schieffer*, 2013 S.D. 11, ¶¶ 36-37, 826 N.W.2d at 640. The court concluded that the children's needs for things "such as food, clothing, transportation, and housing" could be met with $2,963 per month. *Id.* ¶ 38. Further, the court found mother's spending "undisciplined" with a tendency towards "excess and over-indulgence." *Id.* ¶ 42. With respect to standard of living, the court "specifically found that 'there [was] no evidence that would support the supposition that the children will be living an opulent or excessive lifestyle in [the father's] home. To the contrary, the evidence suggests that [the father] value[d] fiscal discipline.'" *Id.* ¶ 38.

[¶15.]　　　Contrary to *Ochs*, the mother in *Schieffer* failed to "present any evidence to suggest that the children's standard of living would dramatically decrease[.]" *Id.* ¶¶ 43-44. Additionally, we observed the importance of the fact "that the trial court did not give [the father] an abatement or cross-credit on his child support obligation even though the children would be living with [him] 50 percent of the time." *Id.* ¶ 46. This was "significant because the obligations set

forth in the child support obligation schedule are typically applied to situations where one parent has primary physical custody of the child(ren) and the other parent only has visitation." *Id.*

[¶16.]     These cases stand for the proposition that a referee or court must look not only at a child's needs but also their standard of living. *See e.g.*, *Evans v. Evans*, 1997 S.D. 16, ¶ 19, 559 N.W.2d 240, 245 ("[T]he trial court's inquiry is to take into account the actual needs and standard of living of the children."). Arron argues that under *Schieffer*, Theresa, as the appealing parent, must establish a *change* in the child's standard of living that is substantially disproportionate. *See Schieffer*, 2013 S.D. 11, ¶ 43, 826 N.W.2d at 641. According to Arron, Theresa failed to provide any evidence establishing that T.S.'s standard of living will be affected by the circuit court's decision.

[¶17.]     However, in *Schieffer*, the mother requested a larger child support award, placing the burden of proof on her to show that "the children's needs [were] not being met by the *current* child support award . . . [or] that the children's standard of living [was] inconsistent with the standard of living they had before the parties' divorce." *Id.* (emphasis added). Theresa notes that the circuit court here correctly observed that her current income cannot cover her expenses, which she testified requires "utilizing unsecured credit and tax refunds." Further, Theresa claims that SDCL 25-7-6.27 imposes no requirement that a parent obtain a second job, citing *Hollinsworth v. Hollinsworth*, 2008 S.D. 102, ¶ 21, 757 N.W.2d 422, 429.

[¶18.]    *Hollinsworth* involved application of SDCL 25-7-6.10(6).[4]  In *Hollinsworth* we held that a referee or court should not grant a downward deviation because a parent has the potential to earn more money based on an advanced degree.  *Id.* ¶ 21, 757 N.W.2d at 429.  *Hollinsworth* did not involve a parental cross-credit, and Arron does not seek a downward deviation because Theresa voluntarily and unreasonably caused underemployment.  To that extent, *Hollinsworth* is inapposite.  The only question is whether the circuit court's findings of fact support its conclusions of law, namely, that applying the cross-credit is appropriate in this case under the circumstances set forth in SDCL 25-7-6.27.

[¶19.]    The court found that "[e]ven without incurring any costs for the care of T.S., [Theresa] lived beyond her means," citing "nearly $1,000 of costs related to" J.F.  While Theresa testified that she spent $350 per month on J.F.'s daycare expenses, there is no other evidence in the record of costs specifically related to J.F.  Exhibit 4 offered by Arron, together with Theresa's Exhibit A, reveal that Theresa's most basic living expenses nearly exceed her monthly income.  She pays $855.67 for her first and second mortgage payments, $190 for utilities, $160 for vehicle expenses, $50 for clothing, and $450 for food, totaling $1,715.67 of her $1,789

---

4.    When *Hollinsworth* was decided, the statute authorized a deviation due to "[t]he voluntary act of either parent which *reduces* that parent's income." *Hollinsworth v. Hollinsworth*, 2008 S.D. 102, ¶ 14, 757 N.W.2d 422, 426.  We emphasized the word "reduces" in our decision in *Hollinsworth*, noting that the mother's income had changed very little  since the divorce. *Id.* ¶¶ 19-20, 757 N.W.2d at 428-29.  Subsequently, the 2009 Legislature amended the statute,  which now provides that a referee or court shall consider the "voluntary and unreasonable act of a parent which causes the parent to be unemployed or underemployed" when deciding whether to allow a deviation from the child support obligation schedule.  2009 S.D. Sess. Laws ch. 130, § 4.

adjusted monthly income. With the exception of a portion of her food and clothing budget, there is no evidence that having J.F. in her home has increased her cost of living and certainly not to the sum of $650 per month. Additionally, a child support obligation may not be modified solely because of the obligation of either parent to provide for subsequent children. *See* SDCL 25-7-6.10(5).

[¶20.]    Unlike the circuit court's findings about the mother in *Schieffer*, the court here made no finding that Theresa's spending was "undisciplined" or that her spending habits were lavish or frivolous. Other than owning her own home rather than living in a rental unit, Theresa's standard of living is primarily centered on the basic necessities of life: food, shelter, clothing, medical care, and transportation. The court did not identify what expenditures it believed led Theresa to live beyond her means.

[¶21.]    Further, the circuit court did not answer the question posed by SDCL 25-7-6.27: whether application of the cross-credit—thereby reducing Arron's child support obligation from $442 to $25—"would have a substantial negative effect on the child's standard of living." Rather, the court bypassed this question by assuming that Theresa could maintain T.S.'s standard of living by obtaining additional employment. On direct examination, Theresa explained she would need to get a second job to pay her bills if the court reduced Arron's child support obligation. Based on this testimony, the court concluded: "[Theresa] testified at trial that she could maintain the current standard of living if she obtained additional employment. The [c]ourt further finds that [Theresa] obtaining additional employment would not 'have a substantial negative [e]ffect on [T.S.'s]

standard of living,' such that the [c]ourt should disallow a cross-credit under SDCL § 25-7-6.27." Yet we observed in *Hollinsworth* that the "[L]egislature has not provided guidance on if, or how, the courts are to consider potential income or underemployment." 2008 S.D. 102, ¶ 21, 757 N.W.2d at 429. And SDCL 25-7-6.27 provides no guidance on this matter.

[¶22.] Additionally, the circuit court's findings do not reflect that it considered "that the parents will share . . . the expenses of the child in *proportion to their incomes*[.]" SDCL 25-7-6.27 (emphasis added). Because the court's findings do not reflect the court considered the expenses of the children in proportion to the parent's incomes or whether the cross-credit would have a substantial negative effect on T.S.'s standard of living, we reverse and remand for the circuit court to make a determination of child support consistent with SDCL 25-7-6.27.

[¶23.] Theresa also moves for appellate attorney's fees and costs in the amount of $3,387.70. Under SDCL 15-26A-87.3, appellate attorney's fees may be awarded "only where such fees are permissible at the trial level." *Grynberg Expl. Corp. v. Puckett*, 2004 S.D. 77, ¶ 33, 682 N.W.2d 317, 324. Attorney's fees may be awarded "in all cases . . . [involving] custody, visitation, separate maintenance, support, or alimony." SDCL 15-17-38. We award Theresa $2,375 in appellate attorney's fees after subtracting court costs.

[¶24.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶25.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.