#30286-aff in pt & rev in pt-JMK
**2024 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHARLES JOSEPH BURKARD,                    Plaintiff and Appellee,

v.

TAMI JO BURKARD,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

ERIN SCHOENBECK BYRE
A. RUSSELL JANKLOW of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota                 Attorneys for defendant and
                                          appellant.


NICHOLE A. CARPER of
Burd and Carper Law Office
Sioux Falls, South Dakota                 Attorneys for plaintiff and
                                          appellee.

* * * *

ARGUED
NOVEMBER 8, 2023
OPINION FILED **07/10/24**

KERN, Justice

[¶1.]        Tami Jo Burkard appealed a child support referee's order to the circuit court, which, after a hearing, affirmed the referee's order. Tami appeals, arguing that the circuit court erred in admitting new oral and written testimony during the hearing and in adopting the child support referee's formula for the parties' unique child custody arrangement. We affirm in part but remand for further calculation due to discrepancies in the parties' income.

## Factual and Procedural Background

[¶2.]        In June 2012, Charles sued Tami for divorce on the grounds of irreconcilable differences. The parties had two children born during the marriage, Daughter, currently age 17, and Son, currently age 15. On April 16, 2014, Tami and Charles entered into a stipulation and agreement dividing the marital estate and resolving custody and parenting time issues involving the children. In the stipulation and agreement, Tami and Charles agreed to share joint legal and physical custody of Daughter and Son. Furthermore, the parties agreed that, under the two-child cross-credit formula, Charles would pay $1,000 per month in child support to Tami. On April 25, 2014, the circuit court granted Tami and Charles a divorce on the grounds of irreconcilable differences, incorporating the parties' stipulation and agreement in its decree.

[¶3.]        The parties followed the custody arrangement under the stipulation and agreement until February 2022, when Daughter, then age 15, expressed her desire to begin living full-time with Tami and remained in Tami's primary custody. On March 23, 2022, Tami filed a motion to modify child custody and child support to

reflect Daughter's change in living arrangements. On April 20, 2022, the circuit court appointed a child support referee to hold a hearing on Tami's request for a child support modification. On June 8, 2022, at the request of the parties, the child support referee cancelled the hearing and moved the circuit court to transfer the proceeding back to the court. The court granted this motion on June 16, 2022.

[¶4.]        On August 5, 2022, the parties entered into an agreement under which Tami would have primary physical custody of Daughter, and the parties would continue to have joint physical custody of Son. Because the parties were unable to reach an agreement on the amount Charles would pay in child support, the child support matter was transferred back to a child support referee (Referee).

[¶5.]        On October 19, 2022, a hearing was held before the Referee to determine child support. At the hearing, the parties concurred as to the amount of each parent's monthly salary and agreed that Tami would provide health insurance for both children at a cost of $213.66 per month.[1] However, Tami and Charles both disputed the proper child support formula that should be applied to their unique custody situation.

[¶6.]        Tami pointed to SDCL 25-7-6.23 as providing the best guidance on how to handle the parties' unique custody situation. SDCL 25-7-6.23 provides:

---

1.    Both parties' child support worksheets indicate that Tami had a gross monthly income of $5,267 and that Charles had a gross monthly income of $15,641. Additionally, both parties' child support calculations indicate that Tami had a net monthly income of $4,120. However, Tami's child support calculation indicated that Charles had a net monthly income of $9,518, while Charles's calculation indicated that he had a net monthly income of $9,308. The Referee used the latter figure and concluded that their joint net monthly income was $13,428.

> If the parents have two or more children between them and each parent has primary physical custody of at least one child, the child support obligation shall be determined by computing the amount of each parent's respective support obligation for the children in the other parent's physical custody, and the support obligations shall be offset in determining a monthly support obligation . . . .

Based on this statute, Tami argued that Charles's support obligation should be calculated separately for each child and then added together. For Son's joint-custody situation, Tami applied the one-child cross-credit calculation found in SDCL 25-7-6.27 for parents with their combined income level. Tami then used the standard one-child primary custody calculation in SDCL 25-7-6.2 for Daughter. Using this approach and adjusting for insurance, Tami argued that Charles's obligation for Son should be $648.20 per month and his obligation for Daughter should be $1,427 per month. Adding these numbers together, Tami concluded that Charles's projected child support obligation would be $2,075.20 per month.[2]

[¶7.]        Conversely, Charles argued that, in addition to SDCL 25-7-6.23, the court should also consider SDCL 25-7-6.27 to arrive at an appropriate calculation for the parties' unique custody situation. In Charles's view, this computation was not as simple as applying the parameters of SDCL 25-7-6.23, because both parents did not have primary custody of at least one child. Instead, Charles proposed that the Referee should first calculate a one-child cross-credit for Son and then add the

---

2.      Following the hearing with the Referee, Tami modified her proposed calculation to use the Referee's figure for Charles's social security withholding, resulting in a new projected obligation of $2,014 per month for both children.

marginal cost[3] of the additional primary custody child—Daughter—in Tami's care. This latter value would be calculated as the difference between a standard one-child primary custody calculation and a standard two-child primary custody calculation. Applying this formula, Charles determined that his cross-credit obligation for Son should be $551 monthly and his additional marginal primary custody obligation for Daughter should be $555 monthly. Adding these amounts and the health insurance payment together, Charles concluded that his monthly child support obligation should be $1,254.

[¶8.]	Following the hearing, the Referee issued its findings of fact, conclusions of law, and proposed order. In its order, the Referee rejected Tami's formula because it resulted in Charles "paying more in child support than he would in a standard two-child calculation" with both children in the primary custody of Tami. The Referee also rejected Charles's formula on the basis that it failed to consider which child would be in the "first" or "dominant" position in any calculation. In other words, whether the cross-credit or primary custody child would be treated as adding only marginal cost. The Referee reasoned that Charles's formula was also inappropriate because using a standard one-child primary custody calculation instead of a one-child cross-credit calculation in the "dominant" position would generate different child support obligations.

[¶9.]	Instead, the Referee concluded that the case presented an "unorthodox physical custody situation" that warranted "an unorthodox calculation." This

---

3.	Marginal Cost = (Charles's Share for Two Primary Custody Children in Tami's Care) – (Charles's Share for One Primary Custody Child in Tami's Care)

prompted the Referee to create a "hybrid calculation," splitting the difference between the two possible permutations of Charles's suggested formula. First, the Referee calculated a standard two-child primary custody amount and divided it by two children, which equaled $932.50. Second, the Referee calculated a two-child cross-credit amount and divided it by two children, yielding $382.25. Adding these values together and adjusting for insurance, the Referee concluded that Charles's monthly child support obligation should be $1,465.58.[4] On October 28, 2022, Tami objected to the Referee's report, arguing that, by dividing both cross-credit amounts by two, the calculation would deprive Tami of the "'base' amount of support that our State determines is necessary for raising a single child."

[¶10.] On February 6, 2023, the circuit court held a hearing on Tami's objections to the Referee's report. During the hearing, Tami again argued that SDCL 25-7-6.23 should guide the child support calculations given the parties' child custody arrangement. Tami asserted that, under SDCL 25-7-6.23, the South Dakota Legislature intended child custody arrangements to be calculated separately so that the "base amount of child support is not taken away." According to Tami, the statutory cross-credit and standard primary custody one-child calculations establish a "base" amount of support that the Legislature has determined is necessary to raise a child in South Dakota. Tami argued to the circuit court that the Referee's formula diluted these amounts by division and that

---

4. The Referee determined that, adjusted for the insurance paid by Tami, half of the standard two-child primary custody was $1,006.50 and half of the cross-credit two-child amount was $459.08.

her formula, by preserving the "base" amount of child support for each child, best complied with the Legislature's intent.

[¶11.] During the hearing, Charles offered the oral and written testimony of attorney and child support referee Tom Keller. Tami's counsel objected to Keller's testimony as violating SDCL 25-7A-22's requirement that evidence considered at the hearing must be confined to the "record established before the referee." The circuit court stated that Tami's counsel was "absolutely right," but it was "going to let the supplementing of the record take place." The circuit court further stated, "I do believe that it's adding information into the record that I think is necessary not only for this court, but also for any review that should take place at a higher level." Tami's counsel objected to Keller's testimony several times during the hearing, but the circuit court ultimately overruled these objections and allowed Keller to testify.

[¶12.] During his testimony, Keller offered his opinion as to potential child support formulas. Keller noted that there are no direct statutory guidelines or case law governing the custody situation at issue. In his written report, which was admitted as an exhibit at the hearing, Keller proposed and analyzed four scenarios or potential formulas for calculating Charles's child support obligation. While noting that the Referee's formula struck a balance between the potential versions and would be easy to apply in future cases, Keller also suggested that courts could instead use all of the formulas to determine a range and then "pick something that seems reasonable in the middle."

[¶13.] On February 14, 2023, the circuit court entered its child support order following the hearing on objections to the Referee's report and recommendation.

The circuit court adopted the Referee's formula requiring Charles to pay $1,465.58 in monthly child support. Although it rejected Keller's supplemental calculations, which slightly differed from the Referee's, the circuit court incorporated Keller's analysis and opinions by attaching them to the order.

[¶14.]      Tami appeals the circuit court's order raising the following issues for our review:

> 1.    Whether the circuit court erred in considering oral and written testimony from a child support referee during the hearing on the objections to the Referee's report.
>
> 2.    Whether the circuit court committed legal error by applying the formula created by the child support referee to the parties' child custody arrangement.

## Analysis

**_1.      Whether the circuit court erred in considering oral and written testimony from a child support referee during the hearing on the objections to the Referee's report._**

[¶15.]      Tami argues that the circuit court violated SDCL 25-7A-22 when it permitted Charles to introduce the oral and written testimony of Keller. SDCL 25-7A-22 lays out the procedure to appeal from a child support referee's report and recommendation. Specifically, SDCL 25-7A-22 provides that:

> The referee shall file the report with the court and cause copies thereof to be served by mailing to the parties and the secretary. Any party shall have ten days from the date of service of the report in which to file objections to the report . . . [i]f any objection is filed, the circuit court shall fix a date for hearing on the report, the hearing to be solely on the record established by the referee.

SDCL 25-7A-22. "Statutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review." *Dakota*

*Constructors, Inc. v. Hanson Cnty. Bd. of Adjustment*, 2023 S.D. 38, ¶ 12, 994 N.W.2d 222, 227. Although a circuit court's evidentiary determinations "will not be overturned absent a clear abuse of discretion[,]" *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 8, 809 N.W.2d 834, 836, SDCL 25-7A-22 provides no room for such evidentiary discretion. When reviewing a referee's award of child support, the circuit court may only consider "the record established before the referee." SDCL 25-7A-22. We thus review this statutory command de novo.

[¶16.] Tami argues that because Keller did not testify during the initial hearing before the Referee, allowing Keller to testify at the hearing before the circuit court constituted new evidence that was outside the "record established before the referee." *Id.* The circuit court acknowledged as much, noting that Charles was seeking to "supplement the record" with Keller's testimony and that Keller's opinions were "adding information into the record." Based upon SDCL 25-7A-22's language, the circuit court's decision to admit Keller's oral and written testimony was error and this evidence will not be considered on appeal.

[¶17.] Tami further argues that the admission of Keller's testimony was prejudicial to her "as it affected the outcome of the proceeding." Tami asserts that Keller's testimony on the appropriate child support formula applicable to the parties' custody situation substantially influenced the circuit court's decision. Specifically, Tami argues that, because Keller was allowed to give what essentially amounted to "expert testimony on the law," his testimony "invaded the province of the [c]ircuit [c]ourt."

[¶18.]     In conducting an appellate review, "[t]he party alleging error on appeal must show . . . error affirmatively by the record and not only must the error be demonstrated but it must also be shown to be prejudicial error." *Wagner v. Wagner*, 2006 S.D. 31, ¶ 15, 712 N.W.2d 653, 659. Prejudice occurs where there is "a reasonable probability that, but for the error, the result of the proceeding would have been different." *State v. Carter*, 2023 S.D. 67, ¶ 25, 1 N.W.3d 674, 685.

[¶19.]     Here, Tami has failed to demonstrate that Keller's testimony was prejudicial to her case. Even though the circuit court improperly admitted Keller's oral and written statements, the circuit court simply adopted the Referee's initial report and recommendation. It appears, based on the circuit court's statements, that it chose to admit Keller's testimony to provide more legal analysis "for any review that should take place at a higher level." Keller's testimony did not displace the circuit court's consideration of the law. In addition, as Charles points out, Keller did not give testimony "involving new factual claims related to the parties' relative income, the children's needs, or any other factual issues relevant to the question [of] whether the Referee properly modified the child support award." Thus, while it was error for the circuit court to admit Keller's testimony, his testimony was not prejudicial to Tami.

> **2.     Whether the circuit court committed legal error by applying the formula created by the child support referee to the parties' child custody arrangement.**

[¶20.]     Tami argues that the circuit court's adoption of the Referee's "hybrid" formula "has no footing in our State's statutes." Tami faults the Referee for assuming that South Dakota's "statutory scheme provides a set expenditure amount

for each child that . . . incrementally increases with the addition of each child." Tami asserts that this is "legally incorrect" and fails to account for the fact that the statutory scheme is "set up so that the amount of child support a parent provides for his/her children decreases with the addition of each child." In essence, Tami argues that the Referee's formula deprives her of the base amount of child support that the Legislature has determined is necessary to cover the costs of raising each of her children.

[¶21.]      Generally, "[w]e review the decision to grant or deny child support under the abuse of discretion standard." *Kauth v. Bartlett*, 2008 S.D. 20, ¶ 8, 746 N.W.2d 747, 750 (citation omitted). However, we review de novo the interpretation of child support formulas set forth by the Legislature. *See id.* ¶ 9, 746 N.W.2d at 750 (reviewing statutes governing child support de novo). On questions of law, particularly involving statutory child support formulas, it is ultimately the responsibility of this Court to interpret the statutory guidelines. However, for the reasons discussed below, no statutory formula is applicable to the child custody arrangement in this case. Therefore, the Referee and circuit court have discretion to arrive at an amount of child support that best approximates what the Legislature would have intended. We review such an award for an abuse of discretion. *See id.* ¶ 8, 746 N.W.2d at 750. Under that standard, "[w]e do not inquire whether we would have made the same decision. Instead, we decide only whether the circuit court could reasonably reach the conclusion it did in view of the applicable law and the circumstances of the case." *Dunham v. Sabers*, 2022 S.D. 65, ¶ 49, 981 N.W.2d 620, 639.

[¶22.]     Both parties have asserted, and this Court agrees, that the current statutory scheme does not expressly address a child custody situation where one party has sole custody of at least one child and both parties share joint custody of one or more additional children.  However, Tami argues that we should adopt her formula, which adds the amount for a standard one-child primary custody calculation to the amount calculated for a one-child cross-credit.  Tami reasons that this approach best complies with SDCL 25-7-6.23, which directs that when "the parents have two or more children between them and each parent has primary physical custody of at least one child," the parties should calculate child support obligations for each child based on their custody situation and "offset" the amounts.  SDCL 25-7-6.23.

[¶23.]     But SDCL 25-7-6.23 does not apply to the parties' custody situation because only one of the parents—here Tami—has primary custody of at least one child.  Even if both parties had primary custody of at least one child, Tami's formula still does not comply with the plain meaning of SDCL 25-7-6.23.  Because "[t]he intent of a statute is determined from what the legislature said . . . [w]ords and phrases in a statute must be given their plain meaning and effect." *Martinmaas v. Engelman*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611.  As correctly noted by Charles, the ordinary meaning of "offset" in SDCL 25-7-6.23 is to subtract, not to add as Tami suggests.[5]  Thus, Tami's formula does not comport with the statutory text.

---

5.     SDCL 25-7-6.23 does not define "offset."  However, as defined in Black's Law Dictionary, offset means "[t]o balance or calculate against; to compensate for [as in] the gains offset the losses."  Black's Law Dictionary (11th ed. 2019).

[¶24.] Additionally, Tami's formula incorrectly inflates Charles's amount of child support because it fails to take into account the economies of scale built into the child support schedule in SDCL 25-7-6.2. As Charles asserts, "adopting [Tami's] calculation means that [Charles] would pay approximately $10 less per month in child support than he would if both children were in [Tami's] primary custody." This is because Tami's formula ignores the decreasing marginal costs of additional children once one child is already living in the home. By treating both children as if they were the only child in Tami's care, Tami's formula substantially inflates Charles's monthly child support obligation. Additionally, adopting Tami's formula could create a perverse incentive for parents to seek primary physical custody of at least one child to gain an inflated monthly child support obligation from the non-custodial parent. Under Tami's formula, this incentive would defeat the Legislature's intent to have parents seek a shared custody plan for their children. *See, e.g.*, SDCL 25-7-6.27 (setting up the statutory scheme for shared parenting child support calculations).

[¶25.] Instead, Charles suggests that we should adopt the Referee's formula, which seeks to achieve an equitable calculation of child support for the parties' custody situation.[6] However, before the Referee, Charles argued that his child support obligation should be calculated by adding the cross-credit one-child amount to the difference between a one-child and two-child standard support amount. Importantly, the inverse of this formula would be the standard one-child amount

---

6. Charles alternatively argues that the Court should use a calculation focused on the children's needs and standard of living, similar to that used in cases where the parents' income exceeds the statutory guideline ranges.

plus the difference of a one-child and two-child cross-credit amount. Although these formulas recognize economies of scale by focusing on the marginal cost of an additional joint or sole custody child, they were rejected by the Referee. By way of explanation, the Referee noted that Charles's proposed formula did not consider which child would be in the dominant position within the calculation. In other words, Charles's formula did not determine whether the standard calculation (as in Charles's formula) or cross-credit calculation (as in the inverse) should be first in the formula.

[¶26.] Ultimately, the Referee attempted to strike an equitable balance between these two alternative possibilities by averaging the statutory standard and cross-credit calculations for two children. Under the Referee's formula, Charles would pay $1,465.58 in monthly child support. By comparison, Charles's calculation would result in a monthly child support obligation of $1,254 and Tami's calculations would result in a monthly obligation of $2,014. Although the Referee's formula resulted in what would appear to be a reasonable child support obligation because it was within the middle range of the amounts calculated under the parties' formulas, when "stress-tested" in varying scenarios, the formula could yield results at odds with the Legislature's statutory scheme governing the calculation of child support.

[¶27.] For example, assume that Charles and Tami have the same monthly income with four additional children for a total of six. Three children are in the primary custody of Tami and the other three are in joint custody. Under the Referee's formula, Charles's monthly support obligation would be approximately $2,180. In comparison, under SDCL 25-7-6.2, if Charles and Tami only had three

children, all in the primary custody of Tami, Charles's monthly support obligation would be approximately $2,207. In other words, according to the Referee's formula, Charles would pay less if Tami was caring for an additional three joint custody children. Similarly, Charles's initial proposed formula, which also sought to calculate the amount of a one-child cross-credit and add the marginal cost of an additional primary custody child, would also result in him paying less in child support than if he only had to pay for one child in primary custody.

[¶28.] Based on our review, the inverse of Charles's initial formula presents a promising alternative. SDCL 25-7-6.2 establishes the base amount of support a custodial parent should receive for the children in their primary custody. Therefore, this amount naturally fits as the "dominant" element in any calculation. In addition, it is possible to determine from SDCL 25-7-6.27 the marginal cost of additional joint custody children when at least one primary custody child is already in the house. Under this formula, a non-custodial parent's monthly support obligation would be calculated as:

- Non-Custodial Parent's Standard Share for the Number of Children in Primary Custody of Custodial Parent

  +

- Non-Custodial Parent's Cross-Credit Share for the Number of Children in both Joint and Primary Custody

  −

- Non-Custodial Parent's Cross-Credit Share for the Number of Children in Primary Custody.[7]

---

7.    It may seem contradictory to calculate the cross-credit share for the number of children in primary custody. However, this is necessary to calculate the

(continued . . .)

[¶29.] The first prong of the equation captures the fact that the parent who has primary physical custody of at least one child (custodial parent) must maintain a home and pay other costs associated with sole custody. The second and third prongs of this equation abide by SDCL 25-7-6.27's cross-credit calculations when "the child will reside no less than one hundred eighty nights per calendar year in each parent's home." SDCL 25-7-6.27. These two prongs capture the economies of scale already built into SDCL 25-7-6.2 by calculating the statutory marginal cost of an additional child who is in joint custody, thereby avoiding the need to approximate economies of scale by dividing by the number of children. When "stress-tested" with scenarios involving larger numbers of children, this formula more accurately approximates the statutory economies of scale while avoiding the under-compensation weaknesses of the Referee's formula. By placing the primary custody children first in the calculation, the formula also avoids the under-

_____

(. . . continued)

marginal cost of additional joint custody children. Intuitively, marginal cost is based on the difference between two comparable values. In short, we use (cross-credit share – cross-credit share) and not (cross-credit share – standard primary custody share). When calculating the marginal cost of the children in joint custody, it is thus necessary to treat all children as if they were in joint custody and use the cross-credit calculation. For example, if there are four children in total, we calculate the marginal joint custody cost of Child 3 and Child 4 by subtracting the cross-credit share for two children from the cross-credit share for four children. This is true regardless of whether Child 1 and Child 2 are in primary or joint custody. In the proposed formula, the number of children in primary custody merely gives us a "base" number of children, onto which we add the additional children who are actually in joint custody. In other words, the last term in the formula is based on the mathematical fiction that the primary custody children are actually in joint custody.

compensation difficulties present in the "stress-tested" results of Charles's and the Referee's formulas.

[¶30.]        However, our role on appeal is not to create a specific child support formula to fill the statutory gap discussed above.  That is for the Legislature.  Here, the child support statutes do not address the factual scenario presented and the circuit court had discretion to equitably determine an amount of child support that reflects, as closely as possible, the overarching Legislative intent behind our statutory scheme.

[¶31.]        Applying this standard to the narrow set of circumstances present in this case, we conclude that the circuit court did not abuse its discretion in affirming the Referee's award of child support of $1,465.58.  This amount was squarely within the range of potential awards presented to the Referee and the circuit court by Tami and Charles.  Indeed, it was not significantly more than what Charles would pay under his proposed formula—$1,254—and slightly less than under the inverse of his proposed formula—$1,550.  However, because there are discrepancies in the parties' stated income and health insurance amounts, we remand back to the circuit court for further calculations.[8]

---

8.    In Tami's brief, she determined that the standard one-child calculation for Daughter was $1,387 and the cross-credit one-child calculation for Son was $627.  This resulted in a total child support obligation of $2,014.  However, applying Tami's formula with the values from the Referee's worksheet, the cross-credit one-child calculation should be $616.36.  This discrepancy appears to be based on some increase in Charles's income determined after the Referee's report was issued.

## Conclusion

[¶32.]     We conclude that the circuit court erred in admitting Keller's written and oral testimony, but this error was not prejudicial to Tami.  We also hold that the circuit court did not abuse its discretion in adopting the Referee's child support award of $1,465.58.  However, we remand for further calculations consistent with this opinion due the discrepancies in the parties' stated income and health insurance amounts.

[¶33.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.